(666 P.2d 1204)
No. 54,434

AERONAUTICAL DISTRICT LODGE NO. 70 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, *Appellant,* v. BEECH AIRCRAFT CORPORATION, *Appellee.*

Opinion filed July 28, 1983.

*Roger M. Theis* and *Paul L. Thomas,* of Render & Kamas, of Wichita, for appellant.

*Marvin J. Martin,* of Martin, Churchill & Overman, of Wichita, for appellee.

Before REES, P.J., SPENCER and PARKS, JJ.

REES, J.: Plaintiff and defendant are parties to a collective bargaining agreement containing grievance procedure provisions. Two sets of grievances were asserted by employees of defendant who are members of plaintiff. One was that of J. R. Dennis and J. A. Orton (Dennis grievance); the other was that of S. J. Chrisman, D. L. Sander and W. J. McGovern (Chrisman grievance). Upon failure to achieve mutually acceptable disposition of the two grievances, plaintiff brought this lawsuit. Without pretrial, the case was tried to the court without a jury on an amended petition alleging the existence of the collective bargaining agreement and "various memorandum and letter agreements"; refusal of defendant to hear the Dennis grievance in violation of the collective bargaining agreement; refusal of defendant to carry the Chrisman grievance to conclusion according to the procedures set forth in the collective bargaining agreement; and refusal of defendant to properly hear the grievances in violation of the memorandum and letter agreements. Judgment was entered in favor of defendant. Plaintiff appeals. We affirm.

In the collective bargaining agreement, it is recited:

"ARTICLE XXVII

. . . .

"It is the intent of the parties hereto that this Agreement, with respect to rate of pay, hours of work, and conditions of employment, shall be observed by the

Company, the Union, and the employees covered by this Agreement; to provide procedures for equitable adjustment of grievances . . . ."

"ARTICLE IV

. . . .

"(a) . . . All overtime shall be divided as evenly as possible within a department on a calendar year basis. . . .

. . . .

"(d) Employees required to report back to work after their regular working hours will be guaranteed two hours and forty minutes work and time worked will be paid at one and one-half times their regular rate."

"ARTICLE IX

. . . .

"(a) When an employee is required to fill a position in an occupation or grade paying a higher rate, he shall receive at least the minimum rate of that occupation and grade within thirty (30) days after being assigned to the new position."

"ARTICLE VII

. . . .

"(e) Any grievance involving the financial status, classification, layoff or transfer of an employee due to the action of the Company, or its supervision, must be presented in writing within three days from time of discovery.

"Only those grievances which are in violation of rates of pay as set forth in this Agreement may be retroactive beyond the date of filing of the grievance.

. . . .

"(g) All disputes shall be handled in accordance with the following procedure."

"ARTICLE VIII

. . . .

"(a) Any employee having a grievance regarding wages, hours or working conditions . . . may present his or her grievance on a verbal basis to the supervision of the department on the shift to which the employee is assigned. . . . [I]f the grievance is not answered satisfactorily within three (3) days, then the employee may present the grievance in writing to the departmental steward for further handling.

"Step (1) The departmental steward will proceed to handle the grievance presenting a written copy of the grievance to the foreman of the department concerned.

"Step (2) If Step (1) results in failure to reach a mutual or satisfactory settlement within three (3) working days, the shop chairman and the steward will proceed to handle the grievance with the general foreman and manager of the department concerned.

. . . .

"Step (3) If Step (2) results in failure to reach a mutual or satisfactory settlement within three (3) working days, the shop chairman and the steward may appeal the case to the Division Manager.

"Step (4) If satisfactory settlement is not reached in Step (3) above, the shop chairman and steward may, within 3 working days, appeal the case to the Vice President of the division involved and/or Director-Industrial Relations.

"Step (5) In the event it is necessary to carry a grievance beyond this point, the

decision may be appealed, within 3 working days, to the President of the Company or his duly chosen representative. Grievances involving questions of overtime relating to administration of policy as set forth in the Company-Union Agreement may, if unresolved at the fourth step of the grievance procedure be appealed by the Union to the President of the Company."

"ARTICLE II

. . . .

"Should an interpretation of any Article of this Agreement become necessary, it shall be made jointly by the Union and the Company."

Of particular note is the fact that no mediation or arbitration agreement, duty or right is applicable to this case. This is conceded and agreed by the parties.

The specific language of the September 22, 1978, Dennis grievance was:

"[We] grieve that [our] rights under Article IX, Item A . . . of the contract have been violated. [We] wish to be made whole from the date assigned as [avionics technicians] to flight area."

When Dennis was transferred to "flight area" in 1975, his pay was at Labor Grade 6. His complaint was that he was assigned to a position calling for payment at Labor Grade 2 but he was not assigned Labor Grade 2 until more than thirty days after his transfer; there was no contention of present improper Labor Grade assignment. The grievance is related to Articles IX (a) and VII (e).

The specific language of the September 6, 1979, Chrisman grievance was:

"[We] grieve to be paid for work which is covered in [our] job write-up but was performed by employees not covered by the contract. [We] grieve to receive 2 hours and 40 minutes, at one and one-half times [our] regular rate."

This grievance concerned an instance when, because of sudden emergency weather conditions, during nonworking hours, personnel outside the bargaining unit moved aircraft under cover to protect them from possible storm damage. Chrisman was not called back. He complained that he was entitled to be paid for two hours and forty minutes at one and one-half times his regular rate. The grievance is related to Articles IV (a), IV (d) and VIII (a) Step (5).

Underlying this lawsuit are two factual matters: (1) at each step in the grievance process, without any hearing, the defendant rejected the Dennis grievance on the ground it was not presented "within three days from time of discovery" [see Art. VII

(e)] and (2) a hearing of the Chrisman grievance by the defendant's president was refused by the defendant on the ground the grievance did not involve a "[question] of overtime relating to administration of policy" [see Art. VIII (a), Step (5)]. Plaintiff claims these acts of rejection and refusal by defendant violated its contractual grievance procedure duties.

The relief asked for in plaintiff's petition was that "defendant be required to submit the . . . grievances . . . to the appropriate boards and persons . . . pursuant to the . . . collective bargaining agreement." The amended petition, filed over defendant's objection, asked that "defendant be required to abide by its agreements . . . that the defendant be required to account for the back wages due and owing the grievants . . . [and] that the defendant be ordered to pay the grievants . . . their back wages." Examination of the record on appeal convinces us plaintiff's counsel prosecuted this case at trial on the theory plaintiff should be granted a judgment ordering defendant to pay "back wages" to the grievants.

Where the trial court has made findings of fact and conclusions of law, our function is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *City of Council Grove v. Ossmann,* 219 Kan. 120, 126, 546 P.2d 1399 (1976); *Sunflower Electric Coop., Inc. v. Tomlinson Oil Co.,* 7 Kan. App. 2d 131, 137, 638 P.2d 963 (1981), *rev. denied* 231 Kan. 802 (1982). A finding of fact made by the trial court was that "[t]he collective bargaining agreement between the parties . . . is *the* controlling Agreement concerning the issues in this action" (emphasis added). This finding is supported by substantial competent trial evidence and is not challenged by plaintiff on appeal. It follows that the "various memorandum and letter agreements," concerning which there was considerable reference at trial and which were pivotal to plaintiff's claim of entitlement to a judgment ordering defendant to pay "back wages" to the grievants as opposed to an order requiring defendant to submit the grievances to appropriate boards and persons, are now irrelevant.

The essence of the questions upon which the parties differ is:

1. In regard to Article VII (e), what constitutes "discovery"

and how or by whom the "time of discovery" is to be decided when that question is material in the handling of a grievance through the procedure directed by Article VIII (a)?

2. In regard to Article VIII (a) Step (5), what is a "question of overtime relating to administration of policy"?

How and by whom are these questions to be decided? We conclude they are not for judicial decision.

The parties correctly agree that state courts and the federal courts have concurrent jurisdiction in the field of labor relations and that in their exercise of this concurrent jurisdiction, state courts are to apply federal substantive law. *Avco Corp. v. Aero Lodge 735,* 390 U.S. 557, 560, 20 L.Ed.2d 126, 88 S.Ct. 1235, *reh. denied* 391 U.S. 929 (1968); *Local Lodge v. Cessna Aircraft Co.,* 186 Kan. 569, 574-575, 352 P.2d 420 (1960). As stated by plaintiff, a guiding philosophy enunciated by federal case law is that labor disputes are best resolved by the parties according to the procedures agreed upon by them in their contract with judicial intervention limited to that necessary to assure compliance with the agreement.

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or a particular plant. . . .

. . . .

"A collective bargaining agreement is an effort to erect a system of industrial self-government. When most parties enter into contractual relationship they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to dealing with other parties. This is not true of the labor agreement. The choice is generally not between entering or refusing to enter into a relationship, for that in all probability preexists the negotiations. Rather it is between having that relationship governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces." *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 578-580, 4 L.Ed.2d 1409, 80 S.Ct. 1347 (1960).

"The congressional policy founding section 301 [29 U.S.C. § 185] actions [suits for violation of collective bargaining agreements] is succinctly stated by Mr. Justice White in Drake Bakeries, Inc. v. Local 50, American Bakery etc., Workers, 370 U.S. 254, 263, 82 S.Ct. 1346, 1352, 8 L.Ed.2d 474, where he states:

" 'In passing § 301, Congress was interested in the enforcement of collective bargaining contracts since it would "promote a higher degree of responsibility

upon the parties to such agreements, and will thereby promote industrial peace" (S. Rep. No. 105, 80th Cong., 1st Sess. 17). . . . The preferred method for settling disputes was declared by Congress to be "[f]inal adjustment by a method agreed upon by the parties" (§ 203 (d) of the Act, 29 U.S.C. § 173 (d)). "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play" (United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566, [80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403]).' " *Brotherhood of L. F. & E. v. Kennecott Copper Corp. (Utah C. Div.),* 338 F.2d 224, 226 (10th Cir. 1964).

Keeping in mind that it concerns parties to a collective bargaining agreement calling for arbitration of disputes as to the meaning, interpretation and application of the provisions of the agreement, *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 566-569, 4 L.Ed.2d 1403, 80 S.Ct. 1343 (1960), is instructive. There we find it said:

"Section 203 (d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173 (d), states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . .' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.

". . . The collective agreement requires arbitration of claims that courts might be unwilling to entertain. In the context of the plant or industry the' grievance may assume proportions of which judges are ignorant. . . .

"[S]pecial heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. [Citation omitted.] The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

". . . The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

"The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."

In contrast to *American Manufacturing,* the parties to the case

before us, by Article II of their collective bargaining agreement, entrusted to their own joint decision (1) interpretation of Article VII (e) with respect to the meaning of "discovery" and how or by whom the "time of discovery" is to be decided when that question is material in the handling of a grievance through the procedure directed by Article VIII (a), and (2) interpretation of Article VIII (a) Step (5) with respect to the meaning of "question of overtime relating to administration of policy." The parties' bargained-for and chosen means for settlement of their differences, that is, their own negotiated joint decisions, must be given full play. These decisions are not to be made by the judiciary.

Plaintiff tried this case on the theory defendant owed the grievants "back wages." It sought a judgment ordering defendant to pay. It did not seek from the trial court an enforcement order, that is, a judgment ordering defendant to carry out its contractual duties for the resolution of the parties' differences. Plaintiff cannot now argue on appeal that the trial court erred in not granting that which it did not seek. *Insurance Co. v. Baer,* 94 Kan. 777, 780-781, 147 Pac. 840 (1915).

We conclude the judgment from which this appeal has been taken must be affirmed. While the trial court mistakenly undertook resolution of some if not all the questions we have identified as being those on which the parties differ, the judgment will not be disturbed because of wrong reasoning. *McClintock v. McCall,* 214 Kan. 764, 767, 522 P.2d 343 (1974); *Micheaux v. Amalgamated Meatcutters & Butcher Workmen,* 231 Kan. 791, 798, 648 P.2d 722 (1982).

Affirmed.