No. 61,066

R. Atteberry, *et al., Appellees/Cross-appellants,* v. Ed Ritchie, *Defendant,* and Board of County Commissioners of Shawnee County, *Appellant/Cross-appellee.*

(756 P.2d 424)

Opinion filed June 3, 1988.

*Randy L. Baird,* of Topeka, argued the cause and was on the briefs for appellant/cross-appellee.

*Stephen W. Cavanaugh,* of Fisher, Heck & Cavanaugh, P.A., of Topeka, argued the cause and was on the brief for appellees/cross-appellants.

*James M. Kaup,* general counsel, was on the *amicus curiae* brief for League of Kansas Municipalities.

*Ed L. Randels,* assistant city attorney, of Wichita, was on the *amicus curiae* brief for City of Wichita.

*Ray E. Simmons,* of Wichita, was on the *amicus curiae* brief for Charles Wahl, *et al.*

The opinion of the court was delivered by

Holmes, J: The Board of County Commissioners of Shawnee County, Kansas, appeals from a judgment of the district court granting certain Shawnee County deputy sheriffs and former deputy sheriffs compensation for their meal periods during the five years immediately preceding February 15, 1985. Plaintiffs have cross-appealed from a denial of prejudgment interest and the denial of compensation to certain deputies attached to the narcotics division of the Shawnee County Sheriff's Office.

The essential facts were primarily submitted by stipulation. The plaintiffs/appellees are current or former deputy sheriffs employed by Shawnee County. During all relevant periods they were covered by a Memorandum of Understanding (MOU) be-

tween the Fraternal Order of Police (F.O.P.) and the Sheriff and Board of County Commissioners of Shawnee County (Board). The MOU was adopted by resolution of the Board pursuant to K.S.A. 75-4331 as a binding agreement. The MOU provided that deputy sheriffs were normally to work eight hours per day, excluding the meal period; that the meal period was to be unpaid time and was to be no less than 30 nor more than 60 minutes; that if an employee worked during his meal period he was to be paid at the appropriate contract rate; and that employees working overtime must report it during the same 14-day pay period in which it was worked. The MOU also contained a detailed grievance and binding arbitration procedure for purposes of resolving disputes as to the interpretation or application of the contract. None of the plaintiffs ever filed a grievance concerning the contentions in this action.

During their meal periods, the plaintiffs were subject to certain restrictions imposed by the sheriff. We do not deem it necessary to set forth the restrictions in detail. We do note, however, that they appear to be such as would be commonly expected of law enforcement personnel. In general, the officers were subject to call during their meal periods and were required to monitor a radio or leave a telephone number where they could be reached. Meal periods were designated by supervisors, were not regularly scheduled, and could be taken at a particular time only if authorized by a supervisor. Most deputy sheriffs were not required to wear their uniforms during their meal periods, but if they chose to do so certain restrictions were placed on their activities if in public places during their meal periods. They were encouraged to dine within the territory to which they were assigned whenever possible. Upon approval by a supervisor, they were permitted to go home during meal periods if they lived within the county and could do so within the time allowed for the meal period. However, two-officer units were to remain together during meal periods in case they were required to respond to a call. Deputies were free to stop at any restaurant they chose, but no more than two county-owned vehicles could be at any single location at the same time. Deputies were prohibited from drinking alcoholic beverages during meal periods. Other similar restrictions applied.

The plaintiffs filed their petition January 7, 1985, seeking (1) a declaratory judgment that they were "at work" during meal periods as a matter of law and (2) compensation at the appropriate MOU wage rate for past meal periods within the period of the statute of limitations. The defendants raised as affirmative defenses, among others, the plaintiffs' failure to exhaust their contractual and administrative remedies, laches, estoppel, and failure to state a claim.

The court bifurcated the trial, severing the issue of liability from the question of the actual compensation due, if any. Following discovery and trial on the liability issue, the court found that the defendants were liable to the plaintiffs for compensation during meal periods because of the restrictions imposed upon them by their superior officers and the sheriff. The court held that plaintiffs were not "materially relieved from duty," and therefore meal periods constituted compensable time. However, it recognized that in those instances when a plaintiff had been granted special permission to pursue private interests which constituted a "material and effective release from duty" no compensation would be due.

During the second phase of the trial, the court granted judgment to specific plaintiffs for specific amounts totaling $361,945.03 for the five-year period prior to February 15, 1985. The judgment was originally entered against the sheriff personally and the Board but was subsequently set aside as to the sheriff. Hence, the Board is the only appellant now before us. The plaintiffs have cross-appealed. This case was transferred from the Court of Appeals on motion of the parties pursuant to K.S.A. 20-3017.

Appellant first contends that the district court erred in entering judgment for the appellees, because they failed to exhaust their contractual and administrative remedies as set forth in their collective bargaining agreement. Appellees respond that it is the function of the trial court to determine whether contractual remedies must be exhausted before filing suit, and that in this case the trial court properly ruled that the grievance procedures set forth in the Memorandum of Understanding were inadequate as a remedy. While appellees concede that contractual remedies generally must first be exhausted before resorting to the courts,

they assert that resort to the applicable contract remedy in this case would have been inadequate and futile. They further concede that none of the appellees attempted to utilize the contractual remedies available and that in those cases where specific officers had actually performed law enforcement duties during meal periods compensation was generally paid if the appropriate claim was made pursuant to the MOU.

The trial court adopted the five-year statute of limitations in K.S.A. 60-511(1) applicable to actions upon written agreements. During the five-year period, the Fraternal Order of Police, as the duly selected bargaining agent for appellees, negotiated three employment agreements with the Board. One covered the period from January 1, 1980, through December 31, 1981; the next covered January 1, 1982, through December 31, 1983; and the third was for the period from January 1, 1984, through December 31, 1986. The provisions relevant to this appeal were essentially the same in all three agreements. Those provisions, as taken from the latest agreement designated C258-83, read:

"§ 11.2 For the purpose of this agreement, a work week shall consist of forty (40) hours worked on consecutive calendar days except for personnel who may be assigned by the Sheriff to work on alternative work schedules. A normal work day for all personnel shall consist of eight (8) hours excluding the meal period. *The meal period shall not be paid time.* The meal period shall be no more than sixty (60) minutes nor less than thirty (30) minutes. Nothing herein shall limit the right of the Sheriff to prescribe alternative work schedules." (Emphasis added.)

"§ 11.5 All employees working a normal work day shall be entitled to two (2) rest periods per shift, excluding the meal period. Whenever possible, these periods shall be scheduled in the middle of each one-half (½) normal work day. The length of the rest periods shall be fifteen (15) minutes per period. *Rest periods shall be paid time.*" (Emphasis added.)

"§ 14.4 *If an employee works during his meal period;* if an employee is called back to work beyond his workday; or if an employee is subpoenaed or otherwise ordered to appear in court or before an administrative body in connection with his duties in either a criminal or civil matter, *such employee shall be paid for such work time at the appropriate rate* depending on whether or not the total hours worked during the affected payroll period exceed those hours specified in Section 14.2." (Emphasis added.)

"§ 14.13 *No employee shall be permitted to work overtime without reporting same during the pay period during which said overtime is worked.* No employee shall have the right to waive compensation for overtime and

every employee shall be paid for all overtime actually worked or given the option to receive compensatory time as further specified in Section 14.8 of this contract." (Emphasis added.)

Section 33 of the MOU sets forth a comprehensive and detailed "Grievance and Arbitration Procedure." Subsection 33.1 provides:

"§ 33.1 A grievance shall mean a dispute concerning the interpretation or application of this contract. F.O.P. Topeka Lodge No. 3 may initiate and continue a grievance on its own volition when the matter to be grieved relates to Sheriff's Department policy or procedure and impacts a bargaining unit employee or employees."

Subsection 33.2 sets forth the facts and information to be included in the written grievance; 33.3 allows for an extension of time to file a grievance by mutual consent; 33.4 provides that failure to timely file a grievance precludes further consideration. Subsection 33.5 sets forth in great detail the steps and procedure to be followed in processing a grievance. The agreement contemplates a procedure for resolving a grievance within the administrative procedure of the sheriff's office within a matter of days after the grievance arises. If the grievance is not resolved satisfactorily to the employee, subsections 33.6 through 33.8 set forth the procedure for arbitration and provide that the arbitrator's decision will be final and binding upon the parties.

The entire grievance and arbitration procedure contained in the MOU is designed to provide the employees with a simple administrative procedure for the speedy resolution of grievances. In addition, pursuant to subsection 33.1, it provides a procedure for the F.O.P. to obtain a speedy resolution of any broad policy or procedure of the sheriff's department which affects the employees generally, such as the dispute now before the court. It is conceded that none of the individual plaintiffs sought to resolve the present dispute by invoking the contractual procedures available, and apparently the F.O.P. did not seek such a resolution on behalf of its members.

Appellant contends the trial court erred in finding "[t]hat the administrative remedy of the grievance procedure set forth in the Memorandum of Understanding between the plaintiffs and defendants (MOU) is inadequate to address the claims of plaintiffs for compensation due them for working during their lunch periods." We agree with the appellant.

At the outset it is clear that none of the parties to the three negotiated agreements in effect during the five-year period contemplated that appellees would receive compensation for meal periods unless actually called upon to perform law enforcement duties. Subsections 11.2 and 14.4 specifically provide otherwise. There has been no showing that the restrictions on the deputies' activities, or comparable ones, were not in effect at the time each MOU was negotiated. To now contend that because of the restrictions the deputies were actually working during all their meal periods over the last five years flies in the face of the clear language of the MOU. Such an interpretation would render those specific provisions of the contracts a nullity. Several of the plaintiffs filed requests for compensation for meal periods when they were actually called upon to perform law enforcement duties and apparently received overtime pay for those periods. In those instances, if any, where work during meal periods was timely reported but compensation was erroneously denied, the plaintiffs had a contractual grievance procedure which they failed to pursue.

Appellees assert that resort to the applicable contract remedy in this case would have been futile and inadequate. In the recent case of *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988), the court was faced with a suit for damages based upon a claim of retaliatory discharge. Coleman, an employee of Safeway, claimed she had been wrongfully discharged from her employment because of an absence from work due to injuries received on the job which were covered by the Workers' Compensation Act. Although plaintiff was covered by a collective bargaining agreement, her action sounded in tort based upon a violation of state public policy independent of the agreement. Contrary to the facts in the present case, Coleman filed a grievance with her union pursuant to the provisions of the collective bargaining agreement, but the union refused to pursue the matter through arbitration. In *Coleman*, we recognized that "[a]rbitral procedures, while well suited to the resolution of contractual disputes, are comparatively inappropriate for the resolution of tort claims." 242 Kan. at 813.

The present case was clearly based upon the collectively

bargained MOU, and recovery was granted by the trial court based upon the written contract as is readily apparent from its application of the five-year statute of limitations. While it is true that if a contractual remedy is truly inadequate it will not bar an action in the courts, there has been no showing of inadequacy or futility here. None of the appellees attempted to implement the grievance procedures pertaining to the issues involved in this case. The appellees have not shown the grievance procedures to have been inadequate or futile. See *Aiello v. Apex Marine Corp.*, 610 F. Supp. 1255 (E.D. Pa. 1985) (failure to even request the union file a grievance defeats plaintiff's futility argument); *Desrosiers v. American Cyanamid Company*, 377 F.2d 864 (2d Cir. 1967) (employee failed to initiate contractual grievance procedure which did not require union assistance; allegation that employer breached collective bargaining agreement was therefore fatally defective). There is no contention by appellees of collusion between the F.O.P. and the appellant Board, that the appellant refused to cooperate in the use of the grievance procedure, or that the union's position on the issue was contrary to that taken by the appellees in this case. Contra *Aguinaga v. John Morrell & Co.*, 602 F. Supp. 1270 (D. Kan. 1985). See generally Annot., What Circumstances Justify Employee's Failure to Exhaust Remedies Provided in Collective Bargaining Agreement Before Bringing Grievance Suit Against Employer in Federal Court, Under § 301 of Labor Management Relations Act of 1947 (29 U.S.C. § 185), 52 A.L.R. Fed. 591 § 4 and current supplement. While the present case does not involve the federal Labor Management Relations Act, many of the cases in the annotation are illustrative of the general principle that contractual and administrative remedies must be exhausted before resorting to court action.

In *Republic Steel v. Maddox*, 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614 (1965), the Supreme Court explained the strong federal policy in favor of requiring employees to first exhaust their contractual remedies before proceeding against the employer in federal court. 379 U.S. at 652-53. The Court continued:

"And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so." 379 U.S. at 653.

The *Republic Steel* holding was reiterated recently in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985).

While this court, of course, is not bound by United States Supreme Court decisions involving its supervisory functions over federal court jurisdiction under the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982) (which applies only to industries affecting interstate commerce), Kansas appellate courts have apparently followed the federal policy. See *Aeronautical Dist. Lodge No. 70 v. Beech Aircraft Corp.*, 8 Kan. App. 2d 703, Syl., 666 P.2d 1204 (1983). In *Armstrong v. Goldblatt Tool Co.*, 242 Kan. 164, 747 P.2d 119 (1987), this court recognized a similar policy:

"In adopting the rule set forth in *Cox* [*v. United Technologies*, 240 Kan. 95, 727 P.2d 456 (1986)], the court reasoned that it was obligated to take into consideration the strong public policy which takes into account the right of parties to enter into contracts and that, where a union and an employer in their agreement decide the remedies that should be available and decide that those remedies should be final and binding, the intent of the agreement should be enforced by the courts and the remedies therein available, if adequate, should be preclusive of any others." 242 Kan. at 168.

While *Cox* and *Armstrong* have now been overruled on other grounds by *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, the rationale of the decisions as they pertain to the requirement of exhaustion of contractual remedies for breach of the contract remains the law of this state.

In the instant case, the MOU was negotiated pursuant to the Kansas Public Employer-Employee Relations Act, K.S.A. 75-4321 *et seq.* K.S.A. 1987 Supp. 75-4330(b) authorizes such agreements to contain grievance and arbitration procedures for "any disputes that arise on the interpretation of the memorandum agreement." The applicable Kansas statutes are clearly consistent with the policy recently articulated by this court in *Armstrong* that dispute resolution procedures embodied in collective bargaining agreements are to be recognized and enforced against those who are parties to the agreement. *Cf. Gorham v. City of Kansas City*, 225 Kan. 369, 378, 590 P.2d 1051 (1979) (collective bargaining agreement negotiated pursuant to K.S.A.

75-4321 *et seq.* can waive constitutional rights of represented employees if negotiated agreement provides fair, reasonable, and efficacious procedures by which employer-employee disputes may be resolved; and employees will be bound thereby).

While appellees claim the contractual grievance and arbitration procedures would be futile and inadequate, no attempt was ever made to invoke the procedures and, indeed, subsequent developments demonstrate the fallacy of the argument. Within five weeks after the petition was filed in this case, procedures were instituted by the sheriff which resolved the dispute over meal period restrictions. If appellees had raised this issue pursuant to the contractual procedures, it might have been readily resolved or at least it could have been a subject of negotiation and perhaps resolved prior to adoption of any or all of the three agreements. Instead, appellees now attempt to recover compensation for all meal periods over a five-year period without ever having given the appellant the opportunity to address the issue as clearly called for in the MOU. Appellees cannot claim the benefits of their collectively bargained agreement, having neglected or refused to accept its burdens and responsibilities. See *Evans v. Marsh,* 158 Kan. 43, 49, 145 P.2d 140 (1944).

We conclude the trial court erred in failing to bar the appellees from recovering under the terms of the express contract where they failed to pursue their remedies set forth in the contract.

While the foregoing would appear to dispose of this appeal, both parties at oral argument voiced the opinion that it was necessary, or at least advisable, for this court to determine whether the mealtime restrictions were such that appellees were "at work" during meal periods. The trial court, based upon two cases from other states, *Madera Police Officers Assn. v. City of Madera,* 36 Cal. 3d 403, 204 Cal. Rptr. 422, 682 P.2d 1087 (1984), and *Weeks v. Chief of State Patrol,* 96 Wash. 2d 893, 639 P.2d 732 (1982), found that the deputies were "not materially relieved from duty [during meal periods] and such time is work time and is compensable." The trial court's reliance on those cases is misplaced. Neither involved a negotiated agreement which specifically addressed the issue of compensation during meal periods, as we have in the present case.

Every job entails some degree of control by the employer over

the actions of the employee. The restrictions placed upon the deputies in the present case were reasonable and of the type necessary to a proper performance of the duties of the employment. The principal objective of all law enforcement is to maintain law and order and protect the public. The restrictions placed upon the deputies in this case are not only reasonable but necessary for the proper performance of a law officer's duties. That such restrictions exist in any law enforcement position is common knowledge and actually works to the benefit of the officers as well as the sheriff's department. Reasonable restrictions as to the conduct of officers during in-shift meal periods not only enhance the respect and reputation of the sheriff's department as a whole but also of the individual deputies.

The negotiated agreements in this case clearly indicate the intent of the parties that compensation was only to be paid for mealtime when the officer was called upon to perform law enforcement duties during a meal period. The restrictions are not so onerous or confining that compliance with them constituted working by the deputies. The mere fact of being available to respond to a call by a superior officer or to assist a citizen in distress does not constitute work during the meal period. The stipulation of facts contained in the record indicates individual deputies, during meal periods, were able to keep medical and dental appointments, obtain haircuts, attend college classes, make purchases, engage in various sporting activities, and throw darts with the sheriff. We hold that unless called upon to actually perform law enforcement duties as contemplated by the MOU, the existence of the restrictions on the deputies' mealtime activities do not, per se, result in work by the appellees.

In view of the foregoing, it is not necessary to consider other arguments asserted by appellant or to consider the cross-appeal of the appellees.

The judgment is reversed.