(208 P.3d 328)
No. 99,767

SHEILA SANTANA, *Appellant*, v. MARY OLGUIN, TOM F. BEARD INSPECTIONS, L.L.C., and JOE DANLER, *Appellees*.

Opinion filed May 29, 2009.

*Jack Peggs*, of Wichita, for appellant.

*Scott E. Sanders*, of McDonald, Tinker, Skaer, Quinn & Herrington P.A., of Wichita, for appellee Tom F. Beard Inspections, LLC.

*M. Duane Coyle*, of Hinkle Elkouri Law Firm L.L.C., of Wichita, for appellee Mary Olguin.

*Patrick J. Murphy* and *James L. MowBray*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Wichita, for appellee Joe Danler.

Before RULON, C.J., MALONE and GREENE, JJ.

GREENE, J.: Sheila Santana appeals the dismissal of her claims generally alleging negligence, fraud, and violations of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, against Mary Olguin, seller; Joe Danler, realtor; and Tom F. Beard Inspections, LLC (TFB), building inspection company, all in connection with her purchase of residential real estate. The claims against TFB were dismissed based upon language contained in the preinspection agreement; the claims against Olguin and Danler were dismissed based upon the language in the real estate purchase contract. Santana contends that the claims were dismissed prematurely and that the district court erred in construing and applying the language of both agreements. We disagree and affirm the district court.

### Factual and Procedural Background

In late February 2005, Santana executed a contract to purchase residential real estate in Wichita from Olguin, whose realtor was Danler. The contract contained a provision for the buyer to elect an inspection of the property for "defects" and a provision that any dispute or claim arising out of the contract be submitted to mediation. Details of these provisions will be set forth below. Santana elected to obtain a property inspection, and she retained TFB for these purposes pursuant to an agreement that contained provisions releasing or limiting liability of the inspection company.

After closing on the property, Santana discovered problems with the property that she contends "were not manifestly evident on visual inspection," including animal odors and damage, dry rot in wood trim elements, and evidence of past water leakage. Ultimately, she brought an action against all three defendants alleging six claims for relief based generally on negligence, fraud, and violations of the KCPA.

TFB filed a motion to dismiss or for summary judgment in lieu of answer alleging that the provisions releasing or limiting liability that were contained in the parties' "Pre-Inspection Agreement" entitled it to dismissal. Santana opposed the motion, suggesting that she had not signed the agreement and that the release and limitation of liability provisions should be read "in context with surrounding facts and circumstances." The district court granted TFB's motion, and it was dismissed from the suit.

Olguin and Danler answered Santana's petition and included as a defense that Santana had failed to submit the matter to mediation as allegedly required by the mediation provision in the real estate purchase contract. Sometime after the filing of these answers, Santana offered to mediate and ultimately filed a motion to compel mediation. In response, Olguin and Danler filed motions to dismiss based on Santana's failure to mediate pursuant to the contract. The district court denied Santana's motion and granted the motions to dismiss these remaining defendants.

Santana now appeals the district court's dismissal of her action against all defendants.

### Did the District Court Err in Dismissing TFB Based on Language in the Preinspection Agreement?

On appeal, Santana argues that the district court erred in granting TFB's motion for dismissal or summary judgment based on the unconditional release and limitation of liability contained in the contract between Santana and TFB. Santana argues (1) the contract both releases TFB from liability and limits its liability and is therefore ambiguous and should be deemed unenforceable as a matter of law and (2) Santana should have been afforded a reasonable opportunity to present facts surrounding the agreement given the question of its unconscionability.

Santana and TFB entered into a "Pre-Inspection Agreement" which contained a provision entitled "Unconditional Release and Limitation of Liability." The agreement signed by the parties obligated TFB to conduct an inspection of the property and also limited the liability that could be incurred by TFB. The contract was signed by Santana's agent and provided in material parts as follows:

"The COMPANY agrees to conduct an inspection for the purpose of informing the CLIENT of major deficiencies in the condition of the property, subject to the UNCONDITIONAL RELEASE AND LIMITATION OF LIABILITY below.

. . . .

"UNCONDITIONAL RELEASE AND LIMITATION OF LIABILITY

"It is understood and agreed that the COMPANY is not an insurer and that the inspection and report are not to be intended or construed as a guarantee or warranty of the adequacy, performance, or condition of any structure, item, or system at the property address. The CLIENT hereby releases and exempts the COMPANY and it agents and employees of and from all liability and responsibility for the cost of repairing or replacing any unreported defect or deficiency and for any consequential damage, property damage, or personal injury of any nature.

"In the event that the COMPANY and/or its agents or employees are found liable due to breach of contract, breach of warranty, negligence, negligent misrepresentation, negligent hiring or any other theory of liability, then the liability of the COMPANY and its agents and employees shall be limited to a sum equal to the amount of the fee paid by the CLIENT to the COMPANY for the inspection and report.

"CLIENT and COMPANY agree that should a court of competent jurisdiction determine and declare that any portion of this Agreement is void, voidable or unenforceable, the remaining provisions and portions shall remain in full force and effect."

We reject Santana's ambiguity argument, concluding the agreement is not ambiguous. "The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction. [Citation omitted.]" *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). "An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners." *City of Arkansas City v. Bruton*, 284 Kan. 815, 832, 166 P.3d 992 (2007). The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. See 284 Kan. at 831-32.

In ruling that the provisions were not ambiguous and otherwise enforceable in this case, the district court relied heavily on *Moler v. Melzer*, 24 Kan. App. 2d 76, 942 P.2d 643 (1997). We agree that the *Moler* opinion is sound and is applicable here. A similar pro-

vision was at issue in *Moler*, and a panel of our court held that the provision was clear enough to advise the vendee of its purpose and potential effect and constituted a clear expression of the inspector's to limit it liability. 24 Kan. App. 2d at 77; see also *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 683-84, 732 P.2d 1260 (1987) (enforcing a similar limitation of liability clause in a service agreement).

Santana argues that the release language is inconsistent with the limitation of liability language, thus making the agreement ambiguous. We disagree. Although the release language extends to "all liability and responsibility for the cost of repairing or replacing any unreported defect or deficiency and for any consequential damage, property damage, or personal injury of any nature," the limitation of liability provision applies broadly to *any* liability, which could include civil penalties or punitive damages that might otherwise be recoverable under "any other theory of liability." We do not conclude these provisions are necessarily inconsistent; and therefore they are not ambiguous.

With regard to Santana's alternative argument—that she was precluded from discovering and proving facts that might have established unconscionability of the agreement, we conclude she failed to make the necessary showing to preclude summary judgment as a matter of law.

Under Kansas law, "a party who freely enters a contract is bound by it even though it was unwise or disadvantageous to the party, so long as the contract is not unconscionable. [Citation omitted.]" *Moler*, 24 Kan. App. 2d at 77. The burden of establishing unconscionability is on the party attacking the contract. *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355 (1989). Whether a contract is unconscionable under the Uniform Commercial Code or the Kansas Consumer Protection Act is a question of law. *Topeka Datsun Motor Co. v. Stratton*, 12 Kan. App. 2d 95, 107, 736 P.2d 82, *rev. denied* 241 Kan. 840 (1987).

Santana argues that she should have been allowed an opportunity to present facts surrounding the agreement which affected its conscionability. Such issues included her out-of-state status, the authority of her agent to sign the agreement, her understanding of

the contractual language, and the benefits she could have expected. Santana essentially argues she was not able to set forth elements of various factors for unconscionability because summary judgment was granted, specifically the factor which examines the circumstances surrounding the execution of the contract. *Wille v. Southwestern Bell Telephone Co.*, 219 Kan. 755, 758-59, 549 P.2d 903 (1976)

Santana, however, had an opportunity to present such facts at the time of her response to TFB's motion for summary judgment. Her response to the motion, however, addressed unconscionability only to this extent:

"*Wille v. Southwestern Bell Telephone Co.*, 219 Kan. 755, [549] P.2d 903 (1976), considered the factors which determine whether contract provisions limiting liability may be unconscionable. Among the relevant factors, are: '. . . the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect.' In the present case, the inspection, at least, in part, was done, because the Plaintiff could not be as personally involved as she might, because she did not negotiate her house deal at arms length in Kansas. The inspection also interfaces with provisions of the real estate purchase contract (Exhibit B). Indeed, both contracts are preprinted, and, not surprisingly, are products of the real estate industry."

We conclude this response was inadequate to establish unconsionability in a manner to defeat summary judgment. Indeed, Santana had an obligation to present specific facts showing a genuine issue of material fact. See K.S.A. 60-256(e). As TFB points out, Santana presented no evidence, in affidavit or otherwise, of her out-of-state status, her agent's authority, or her understanding of the contract language. Because of Santana's lack of presented evidence and assertions, there is no indication of inequality of bargaining power or an indication that she could not have sought a different inspection company if she was dissatisfied with the contract provisions. See *Moler*, 24 Kan. App. 2d at 79; *In re Universal Serv. Fund Tele. Billing Practices*, 300 F. Supp. 2d 1107, 1125-1126 (D. Kan. 2003).

Additionally, given the facts suggested by Santana, the release and limitation of liability was not hidden within the agreement but written in relatively plain language and set forth after an all-capital-

and-bold heading that clearly and unequivocally signaled the importance of the release and limitation of liability language. See, e.g., *Frets v. Capitol Federal Savings & Loan Ass'n*, 238 Kan. 614, 622, 712 P.2d 1270 (1986) (finding no unconscionability where, among other things, the relevant provision was " 'not buried in a mass of fine print' "); *Wille*, 219 Kan. at 763-64 (where terms and conditions were set out in "clearly legible type" and were "not couched in confusing terms").

We conclude that the parties' preinspection agreement was not ambiguous, that its release and limitation of liability language was valid and enforceable, and that Santana failed to adequately demonstrate her unconscionability argument to defeat summary judgment. The district court did not err in dismissing TFB as a defendant.

### Did the District Court Err in Dismissing Santana's Claims Against the Seller and Realtor Due to Her Failure to Submit the Claims to Mediation Prior to Suit?

Santana next argues the district court erred in dismissing her claims against Olguin and Danler based on Santana's failure to submit her claims to mediation prior to filing suit. She contends the district court erred in construing and applying the mediation provisions of the real estate purchase contract. The interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006).

The mediation provision of the contract provides as follows:

"29. MEDIATION: Any dispute or claim arising out of or relating to this Contract, the breach of this Contract or the services provided in relation to this Contract, shall be submitted to mediation in accordance with the rules and procedures of the Homesellers/Homebuyers Dispute Resolution System. Disputes shall include representations made by the Buyer, Seller, or any real estate broker licensee in connection with the sale, purchase, financing, condition, or other aspect of the Property including, without limitation, allegations of concealment, misrepresentation, negligence, and/or fraud.

"Any agreement signed by the parties pursuant to the mediation conference shall be binding.

"The following matters are excluded from mediation hereunder: (a) judicial or non-judicial foreclosure or other action or proceeding to enforce a mortgage or

escrow contract; (b) an unlawful detainer action; (c) the filing or enforcement of a mechanics's lien; (d) any matter which is within the jurisdiction of a probate court; or (e) violation of Kansas real estate license laws. The filing of a judicial action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the right to mediate under this provision, nor shall it constitute a breach of the duty to mediate.

"By signing below, the parties hereby acknowledge receipt of the standard announcement brochure for the Homesellers/Homebuyers Dispute Resolution System, and agree to submit disputes, as described above, to mediation, in accordance with the Homesellers/Homebuyers Dispute Resolution System and rules and procedures of the mediation provider."

In ruling against Santana, the district court relied on this court's opinion in *Crandall v. Grbic*, 36 Kan. App. 2d 179, 138 P.3d 365 (2006). In *Crandall*, a panel of this court affirmed the dismissal of similar claims against a realtor based on a mediation provision identical to the provision here. Citing the proposition that the law favors reasonable interpretation of contracts, the court found that "[t]o allow the plaintiffs to attempt mediation to avoid summary judgment after defendant had devoted time and money defending their suit is unreasonable." 36 Kan. App. 2d at 198. The panel further found that "[a]lthough defendant is entitled to summary judgment on all issues because of the plaintiffs' failure to prove their claims, the district court was correct to grant defendant a summary judgment by reason of plaintiffs' failure to timely seek mediation." 36 Kan. App. 2d at 198.

Santana argues on appeal that *Crandall* does not control because (1) it misconstrued the contract language; (2) in *Crandall*, the parties had expended far more effort and expense than here; and (3) here the court had a "less harsh" remedy, *i.e.*, ordering mediation prior to discovery. We reject these proposed distinctions and follow *Crandall* in affirming the district court.

First, we disagree that *Crandall* misconstrued the contract. We acknowledge that the subject provision does not expressly require that submission to mediation must *precede* the filing of suit and that it could easily have so provided by insertion of the phrase "prior to filing suit." Nevertheless, we conclude that this sequence is implied or contemplated when considering the totality of the

provision. A material part of the provision is the covenant to submit claims to mediation in accordance with the "Homesellers/Homebuyers Dispute Resolution System" and its rules and procedures. The brochure referenced and delivered with the contract describes the system as an alternative dispute resolution that affords parties an affordable method of "resolving disputes out of court." Its benefits are described as including "faster than litigation," "less expensive than litigation," and "discourages litigation of frivolous claims." The brochure posits "Frequently Asked Questions," including: "If a party signs a contract or an addendum that contains a mediation clause, is the party required to mediate if a dispute arises?" The answer given is: "Yes. The signed agreement to mediate is binding, and *parties must submit the dispute to mediation*. The agreement to mediate does not bind the parties to results that might be achieved during mediation, and parties retain the right to go to court *in the event that mediation is unsuccessful.*" (Emphasis added.) We conclude from these aspects of the provision that mediation is intended to provide an alternative to litigation and thus creates a condition precedent to litigation that the parties mediate their disputes. Our conclusion is consistent with case law that has construed contracts with grievance procedures as requiring pursuit of such procedures *prior* to litigation. See, *e.g., NEA—Topeka v. U.S.D. No. 501*, 269 Kan. 534, 7 P.3d 1174 (2000); *Atterberry v. Ritchie*, 243 Kan. 277, 281-85, 756 P.2d 424 (1988); *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003).

Second, we refuse to distinguish *Crandall* on the basis that here far less effort and expense had occurred when the parties sought to mediate. Although we acknowledge that Santana's motion to compel mediation was filed earlier in the litigation than in *Crandall*, we decline to specify some criteria for the point at which the parties have gone too far to mediate. As noted by the panel in *Crandall*: To allow the plaintiffs to attempt mediation to avoid summary judgment after defendant had devoted time and money defending their suit is unreasonable." 36 Kan. App. 2d at 198. This consideration applies here because Santana filed a seven-page six-count petition against multiple defendants requiring response by

answer or motion, the TFB motion proceedings involved all parties in briefing and argument, discovery vehicles had been drafted and served, and all this litigation activity occurred prior to the suggestion of mediation. There is no middle ground; mediation cannot effectively and fully serve its purpose of alternative resolution unless attempted prior to suit.

Finally, we understand Santana's last argument as suggesting that the district court abused its discretion in dismissing the lawsuit rather than considering "a less egregious remedy." Judicial discretion is abused when a judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said the trial court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). We are aware of no authority in Kansas, nor does Santana cite any, that suggests that it may be an abuse of discretion to dismiss an action pursuant to K.S.A. 60-212 or K.S.A. 60-256 unless less egregious alternatives have been explored. There was no abuse of discretion in the dismissal of Santana's claims under these circumstances.

Affirmed.