Carl BLUM et al., Plaintiffs-Appellants,

v.

GREAT LAKES CARBON CORP.,
Defendant-Appellee.

No. 26808.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1969.

Rehearing Denied Dec. 2, 1969.

George C. Dixie, Chris Dixie, Dixie,
Wolf & Hall, Houston, Tex., for plain-
tiffs-appellants.

Robert Q. Keith, Beaumont, Tex., Jo-
seph B. Donovan, New York City, Mehaf-
fy, Weber, Keith & Gonsoulin, Beaumont,
Tex., for defendant-appellee.

Before BELL and THORNBERRY,
Circuit Judges, and CHOATE, District
Judge.

THORNBERRY, Circuit Judge:

This is an appeal from the United States District Court for the Eastern District of Texas. Appellants, plaintiffs below, were employed as shift workers in appellee's carbon manufacturing plant in Port Arthur, Texas. During the relevant period (July, 1964 to August, 1965), the workers followed a practice known as "early relief." This practice had been in effect for over twenty years and had been originated by the employees themselves. Under this practice, the employees would arrive at their work site and begin work approximately thirty minutes before their scheduled shift began. In turn, they would be relieved by the incoming shift thirty minutes early. The relieved employees would return to the main gate area where they were free to bathe and change clothes and generally do what they wished. They were not free to punch out, however, until the end of their scheduled shift. Thus a man scheduled to work on the 7 a. m. to 3 p. m. shift [1] would actually start work at 6:30 a. m. and be relieved at 2:30 p. m., but would not punch out until 3 p. m. He would be paid for eight hours' work. Appellants claim that the time spent by them on the plant premises subsequent to their being relieved by the incoming shift workers and prior to the time they punched out at their scheduled shift quitting time was working time within the Fair Labor Standards Act, thereby entitling them to overtime compensation.

The case was tried before the district judge who denied relief. In his conclusions of law, the trial judge held that:

(1) Plaintiffs were not engaged in activities compensable under the Fair Labor Standards Act for which they were not paid by the defendant company.

(2) Plaintiffs were estopped to assert a claim for overtime benefits from the practice of early relief.

(3) If some of the plaintiffs did engage in compensable activities for which they were not compensated during the period in controversy, the amount of time was so slight as to bar recovery under the doctrine of de minimis.

I.

The basic question for decision is whether the employees should be compensated for the time they spent on the plant premises after they were relieved but before they punched out at the end of their shift. This is basically a fact question, to be gleaned from all the facts and circumstances of each case. *See* Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. In determining whether idle time is compensable, two factors to be considered are whether the time is spent predominantly for the employer's or employees' benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time. Mitchell v. Greinetz, 10th Cir. 1956, 235 F.2d 621, 61 A.L.R.2d 956.

Appellants argue that work time under the F.L.S.A. is not limited to the time an employee is actively engaged in performing his work, but includes idle time which is predominantly for the benefit of the employer. Appellants further argue that the practice of early relief benefited the employer because it created a period of thirty minutes when the company had two full crews on the plant premises. This benefited the company in that it provided a "pool" of trained men which appellee could use to fill vacancies for the oncoming shift or take care of other contingencies that might require additional manpower. Also, the emergency call-out provision,[2] which required additional compensation, could be avoided by

---

1. There were three shifts: 7 a.m. to 3 p.m., 3 p.m. to 11 p.m., 11 p.m. to 7 a.m.

2. The collective bargaining agreement provided for emergency call-out time, which became payable if an employee had already punched out of the plant when

called. Under this provision if an employee was called out for five hours or less, he would receive a minimum of five hours pay, in addition to time and one-half for any hours actually worked during the five-hour period.

tagging men for overtime duty before they punched out. It is undisputed that men were somtimes called back from the shower room to work overtime.

█ The company counters by emphasizing that early relief was created for and by the employees, that early commencement was wholly voluntary, and that the practice was of no benefit to the corporation. In this connection, the company argues that it derived no advantage from a surplus pool available for recall: There was a full crew of men on duty to operate the plant at all times, and each man was required to remain until relief appeared—thus no pool of men in the shower room was needed. The "pool" served no advantage if an employee was absent because the men on duty could not leave their post until relieved. Thus, if there were an absence, one of the men on duty would be required to stay over and would be compensated on an overtime basis. Similarly, if there were extra work to be done, one or more men from the prior shift would be held over on an overtime basis; these men would already be on the job, would not go to the shower room, and thus would not be a part of the shower room pool. Further, it was of no advantage to the company to use early relief as a method to avoid the emergency call-out provision because call-out was rarely needed and cost the company only a trifling amount in extra pay: Among the shift workers, there were only fourteen emergency call outs during the last year of early relief (1965) and only twelve during the year immediately after the practice was abolished. The company also argues that walking from the job site to the shower room, taking a shower and changing clothes are not compensable under the provisions of section 4 of the Portal-to-Portal Act, 29 U.S.C. § 254, as complimented by section 3(o) of the Fair Labor Standards Act, 29 U.S.C. § 203(o).[3] Under the Portal-to-Portal Act, an employer cannot be made subject to liability under the F.L.S.A. for failure to pay the prescribed minimum wage or overtime for activities that are preliminary to, or postliminary to, the principal activity for which the employee is employed to perform, unless there is a contract, custom or practice requiring pay for these preliminary or postliminary activities.[4]

3. Section 3(o) of the F.L.S.A. provides:
   (o) Hours Worked.—In determining for the purposes of sections 206 [minimum wages] and 207 [maximum hours] of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.
   29 U.S.C. § 203(o).

4. The Portal-to-Portal Act does not exclude from working time preliminary or postliminary activities made compensable by contract. Appellants argue that even if the activities for which they seek compensation are considered preliminary or postliminary activities, they are nevertheless compensable because of the provisions of the collective bargaining agreement in effect during the relevant period. The provisions that appellants rely on provide that eight hours should be the normal working day for shift employees; that forty hours shall be the normal scheduled work week; that employees were entitled to be paid time and one-half for any hours worked in excess of eight hours in one week day; and that the employees' schedule for each work week be posted weekly. It is clear, however, that the activities at issue here are not made compensable by "an express provision of a written or unwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer." 29 U.S.C. § 254(b). In Newsom v. E. I. Du Pont De Nemours & Co., 6th Cir. 1949, 173 F.2d 856, 859, the court stated:
   The exception of the Portal-to-Portal Act * * * does not apply to any and all activities engaged in by employees, but only to such as are expressly compensable under a written or nonwritten contract or custom or practice in effect covering the activity. In order that activities be expressly compensable under this provision they

Jackson v. Air Reduction Co., Inc., 6 Cir. 1968, 402 F.2d 521. Whether activities such as bathing and changing clothes are activities that are preliminary or postliminary to the principal activity for which the employee is employed to perform is basically a fact question. Mitchell v. Southeastern Carbon Paper Co., 5th Cir. 1955, 228 F.2d 934.

Now we must consider the evidence presented at the trial and must determine whether the district judge's findings are based on the evidence or, rather, are clearly erroneous.

Company officials testified that the company did not like the practice of early relief and permitted the practice only as an accommodation to the employees. Testimony was presented to show that the company did not require the employees to give early relief, and no one was ever docked pay for not relieving early (thus an employee who did not give early relief, came to work at the scheduled starting time of 7 a. m., but was given early relief at 2:30 p. m. would nevertheless be paid for eight hours).

One of the plaintiffs testified that ordinarily an employee was not called back to work after he had been relieved. And it is undisputed that if a man worked after the end of his scheduled shift, he would be paid overtime for the hours he worked after the end of his shift. It was further shown that throughout the many years the practice of early relief was in effect, no employee filed a grievance concerning it and never in the course of

several collective bargaining sessions did the employees make a claim for additional compensation. Also, it was shown that in 1947 and 1948 the Wage and Hour Division of the Department of Labor investigated the practice of early relief at this plant and found no wrongdoing on the part of the company.

The company's manager of labor relations testified that after being relieved the employees were free to do anything they wished and could even leave the plant premises, as long as they returned to punch out at the scheduled time. He stated that the company required the employees to punch out at the scheduled time in order to maintain some semblance of order: To allow the employees to punch in and punch out at will would have created a choatic and intolerable situation. He also testified that the practice of early relief did not benefit the company by allowing it to avoid the emergency call-out provision because men who are called out usually work longer than five hours, in which case a call-out costs the company nothing extra and therefore there is no advantage to tagging men before they punch out. He also stated that filling vacancies or absences is more efficient under the new system (under which the employees cannot give relief earlier than five minutes before the start of the scheduled shift), because under the old system of early relief the employees would be scattered about the plant and some would actually hide from the foreman if they did not want to be charged with overtime.[5]

---

must be specifically described. A contract which does not refer to and specify the activities for which compensation is to be made does not bring the exception into force.

5. The testimony on this matter is as follows:
  A. Under the way we are currently operating, the foreman sits in his office, he has the telephone numbers of his employees, he determines who is supposed to work overtime; he gets on the phone and calls the individual. The man comes out on an emergency called-out basis. While he is getting him and between the

time he calls him and the time he gets there the foreman has a man on the job performing the work. When the man comes in on an emergency call-out, he comes down to replace the fellow that is on the job, who doesn't want to work or should not be working because of overtime distribution. He goes home and the man who comes out on the emergency call goes on the job and we pay time and half for the time actually worked because he will certainly get there before three hours, and if he works more than five hours on an emergency callout, it costs us nothing more than time and a half overtime. In situation No. 1, the

In light of the evidence presented, the district judge specifically found that no plaintiff was required by the company to report early to work or to relieve early during the relevant period; the practice of early relief originated among the employees of the company; no benefit inured to the company from the practice; in labor negotiations with plaintiffs' union, the company sought to abolish the practice; each plaintiff was compensated for all hours worked as an employee of the company; each plaintiff was compensated for hours worked in a work-week in excess of forty hours by being paid overtime wages; the company did not control, nor attempt to control the activities of the individual plaintiffs for more than forty hours a week without compensating such plaintiffs by appropriate overtime pay.

Under Rule 52(a) of the Federal Rules of Civil Procedure, we may not set aside these findings of fact by the trial court unless they are clearly erroneous. The lower court's findings may be reversed as clearly erroneous only when "the force and effect of the testimony considered as a whole convinces that the finding * * * does not reflect or represent the truth and right of the case," Sanders v. Leech, 5th Cir. 1946, 158 F.2d 486, or when the reviewing court is left "with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct 525, 542, 92 L.Ed. 746. Findings of fact may also be set aside if they were induced by an erroneous view of the law. See Chaney v. City of Galveston, 5th Cir. 1966, 368 F.2d 774. After carefully reviewing the entire record, we are convinced that the trial judge's findings were based on substantial credible evidence and a proper view of the applicable law; we therefore hold that those findings are not clearly erroneous. We affirm the trial court's holding that appellants were not engaged in activities compensable under the Fair Labor Standards Act for which they were not paid by the appellee. This holding is entirely consistent with the few reported cases that are in point. *See, e. g.,* Jackson v. Air Reduction Co., Inc., *supra*; Battery Workers' Union Local 113, United Electrical, Radio & Machine Workers of America, C. I. O. v. Electric Storage Battery Co., E.D.Pa.1948, 78 F.Supp. 947.[6] We agree with the statement of the Sixth Circuit in the *Jackson* decision (a case almost identical to this one):

> [U]nder the facts in this case it would be inequitable as well as contrary to the law to have the employer agree to adopt a change in its work schedule for

---

way it worked before, the foreman had to go out and look for people and they all weren't sitting on a bench or in line, they were all over the plant, they might be over in the parking lot, in the [89] shower room, they might be at the timekeeper's house, they might be in the locker room, they might be any number of places and the foreman had to go hunt him, which would take a lot of his time. In the meantime he had employees who hid from him and made themselves kind of unavailable to be asked because they didn't want to get charged with the overtime on the overtime distribution sheet. They knew if they didn't want to work overtime but if they were asked they would have to get charged with eight hours, so they even played little tricks like making themselves unavailable or hard for the foreman to find. This system is far better. It is more orderly. It is easier and less costly to the Company.

6. Appellants rely on the following cases, which held that free or idle time was working time within the meaning of the F.L.S.A.: Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (employees playing checkers while on employer's premises to respond to fire calls); Wirtz v. Sullivan, 5th Cir. 1964, 326 F.2d 946 (sawmill workers waiting for sawmill to be repaired); Aeromotive Metal Products, Inc. v. Wirtz, 9th Cir. 1963, 312 F.2d 728, 729 (mid-morning break time); and Goldberg v. Willmark Service System, Inc., D.Minn., 1961, 215 F.Supp. 577 (waiting time of shoppers employed by a shopping service). These cases are easily distinguishable from the instant case in that in each of the cases cited by appellants, the idle or "nonworking" time was (1) *imposed by the employer*, (2) *for its own benefit*.

the accommodation and personal convenience of its employees, and then permit the employees to force the Company to pay a penalty for accommodating them.

## II.

In view of our affirmance of the district judge's first holding, it is unnecessary to consider his holdings on the doctrines of estoppel and de minimis.

Affirmed.