The CITY OF UNIVERSITY
PARK, Appellant,

v.

The UNIVERSITY PARK POLICE
ASSOCIATION, et al., Appellees.

No. 05–88–00125–CV.

Court of Appeals of Texas,
Dallas.

Jan. 31, 1989.
Rehearing Denied March 21, 1989.

James K. Peden, III, George C. Dunlap, Strasburger & Price, Dallas, for appellant.

Ronald E. Deutsch, Ronald E. Deutsch & Associates, P.C., Dallas, for appellees.

Before WHITMAN, BAKER and KINKEADE, JJ.

KINKEADE, Justice.

At issue in this case is whether the City of University Park (the City) must pay University Park police officers for the time when they are on lunch break but are subject to call. Resolution of this issue depends on the interpretation of article 1269p, section 6A, of the Texas Revised Civil Statutes and sections 201 through 216 of Title 29 of the United States Code, which is the Fair Labor Standards Act (the FLSA). Section 6A of article 1269p regulates the number of hours police department employees can work in cities that fall within the statutory guidelines. TEX.REV.CIV.STAT. ANN. art. 1269p, § 6A (repealed eff. Sept. 1, 1987), *presently recodified in* TEX.LOC. GOV'T CODE ANN. § 142.001(j), (k), & (*l*) (Vernon 1988). The FLSA requires an employer to pay an employee at a rate of not less than one-and-one-half times his regular hourly rate of compensation for work in excess of forty hours per week. 29 U.S.C. S. § 207(a)(1) (1975). We hold that the police department employees are not entitled to be compensated for their meal break. Consequently, we reverse the judgment granted the police department officers and employees and render judgment that they take nothing against the City.

### I.

The employees of the University Park Police Department are required to work eight-hour shifts each day and must report to work twenty-five minutes before each shift for "detail" time. Each policeman was given a forty-minute meal break. The City has paid the policemen for the detail time and the seven-hours-and-twenty-minute shift. The City did not pay for the mealtime break even though the police officers were always on call. The policemen and other department employees sued the City for overtime pay for the detail time in excess of their regular eight-hour day. The policemen argued that the entire eight-hour tour of duty, including the meal break, was compensable; therefore, the detail time was overtime.

The City responded that the tour of duty includes a forty-minute meal break that is not compensable, and, therefore, adding the detail time to the tour of duty less the meal break means the police officers have worked only seven-hours-and-forty-five minutes per day. Under the City's analysis, the policemen are not entitled to overtime compensation.

The case was tried nonjury. The testimony revealed certain restrictions on the mealtime break. The restrictions are: Officers are not permitted to take a meal break during the first or last hour of their tour of duty; they must notify the dispatcher before taking a meal break; the dispatcher can refuse an officer permission to take a meal break at that time if, for example, other officers are already taking their meal break; and officers can eat only at restaurants within the city or within one-half mile of the city limits; they must remain in uniform and must maintain their weapons and portable radios; and the officers are on call during meal breaks and must respond if the dispatcher or supervisor calls.

One officer stated that patrolmen are permitted to eat at establishments that serve alcoholic beverages but are not permitted to imbibe. Another officer testified he always went home to eat. A meal break could be suspended entirely if circumstances required an officer to remain on duty. The officers said there were no records indicating the frequency of interruptions or their duration, and none were produced by the officers. The testimony regarding the interruptions of the meal break varied from a maximum of two or three interruptions per week to a minimum of one or two interruptions every two or three weeks, depending on the officer testifying and the shift worked. One dispatcher testified that during her two-and-one-half years as a dispatcher, during which she worked all three shifts, she never called an officer while he or she was on a meal break.

The officers included in the term "interruption" instances when citizens approached them and talked to them, even if it was only for a few minutes. One officer testified that no matter how brief the interruption, even if it required only picking up the radio and responding "10–4," that was an "interruption."

Several dispatchers testified that when an officer was on a meal break they attempted to direct calls to other available personnel before interrupting the meal break. Police Lieutenant Michael Brock testified that the procedure followed for a call while officers are on the meal break is that the dispatchers are to first call a patrol supervisor to cover the call, and, if they are unavailable, then to call the lieutenant on duty. One dispatcher said that he attempted to hold calls if possible during meal breaks.

## II.

The police department officers' and employees' claims for overtime compensation depend upon the assertion that their mealtime is work time. We hold that under the facts of this case, the mealtime is primarily for the employees' benefit and is not compensable.

### A.

Both sides cite cases that consider whether meal breaks are compensable time and whether on call time, apart from meal breaks, is compensable time. We consider only the cases dealing with meal breaks since they more directly deal with the issue in this case.

We rely on two cases that consider whether mealtime is compensable. In one instance, the court held that the meal break was compensable. *Fort Worth Stock & Sons, Inc. v. Thompson*, 194 F.2d 493 (6th Cir.1952). In the other, the court held that the meal break was not compensable. *Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), *cert. denied sub nom. Cummings v. United States*, 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51, *reh'g denied*, 474 U.S. 1014, 106 S.Ct. 547, 88 L.Ed.2d 476 (1985). We further rely on two cases that specifically consider when an employer may use lunch breaks to offset preshift and postshift work. *Agner v. United States*, 8 Cl.Ct. 635 (1985); *Baylor v. United States*, 198 Ct.Cl. 331 (1972).

In *Fort Worth Stock & Sons, Inc.*, employees at a mill sued for compensation for their lunch break under the FLSA. The evidence in this case showed that engineers at the mill were required to stay at their engines during lunch to ensure the safe and efficient operation of them. One engineer testified that the chief engineer ordered him not to leave the engine room during the lunch period. Another engineer testified that he usually ate lunch as he sat watching the gauge while a tank was filling in order to insure that the tank did not overflow.

The court approved two comments by the trial judge that summarized the evidence. "A man who has to oil machinery with a sandwich in his hand is not having a free lunch period." *Fort Worth Stock & Sons, Inc.*, 194 F.2d at 496. The trial judge also added that "a man who has to have his eyes glued upon the watching of grain coming down from floors above and be careful that there is no stoppage during the entire eight hours of his shift, including his lunch period, does not have a free lunch period." The court held that under these facts the meal was compensable.

In *Hill*, letter carriers and other postal employees sued the United States under the FLSA for compensation for meal breaks. The case was tried nonjury, and the trial court agreed to consider the claim of one letter carrier as typical of the other plaintiffs. The particular letter carrier received a half-hour lunch break between 12:45 p.m. and 1:15 p.m. He had three places from which he could choose to eat that were approved by a supervisor. He proceeded to an authorized lunch place along an authorized line of travel. The lunch period began when the letter carrier either secured his satchel in a relay box and began walking to lunch or when he secured undelivered mail in his vehicle and drove from his route to an authorized lunch place by an authorized line of travel. The

carrier remained responsible during the break for the security of the mail and other government property entrusted to him. The carrier remained in uniform and served the public by accepting mail and providing other information if necessary. The carriers were required to be courteous to the public but were not required by postal regulations to accept mail during their meal break or to conduct postal business during their breaks.

One supervisor stated he had had numerous conversations with letter carriers, and none had ever complained of customers interrupting their lunches. A route inspector said he had observed lunch breaks and had never seen a carrier's meal interrupted. He added that when he had been a letter carrier, he had accepted mail at lunchtime once a week or so. One letter carrier testified he had been interrupted at meal breaks frequently by customers requiring information or service.

The letter carriers relied heavily upon section 785.19 of the Code of Federal Regulations, which provides:

> (a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.[1] For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. [Citations omitted.]
>
> (b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if

he is otherwise completely freed from duties during the meal period.

*Hill,* 751 F.2d at 813 n. 2 (quoting 29 C.F.R. § 785.19 (1983)). The court noted that the federal regulations were intended to serve as a guide to employers and employees and were not binding on the courts.

The court found that the letter carrier's lunch break was not compensable because he was not required to perform any activities that could be characterized as substantial duties. *Hill,* 751 F.2d at 814. The court added, "Our holding is based on the need for a flexible and realistic standard for compensability and on the particular circumstances of this case." As long as an employee was able to pursue his or her mealtime adequately and comfortably, was not engaged in the performance of any substantial duties, and did not spend time predominately for the employer's benefit, the employee was relieved of duty and was not entitled to compensation under the FLSA. The court noted the carrier was free to comfortably enjoy his meal without distractions. The carrier failed to show that he was subject to frequent or even occasional interruptions by postal customers during his meal period, and, to the extend there was any interference, it was "purely *de minimus.*"

Confirmation of this Court's interpretation of the statute comes from two cases that illustrate that an officer can be on duty and subject to call during a lunch break and the meal period may nevertheless not be compensable and that noncompensable meal breaks may be used to offset preshift and postshift work.

In *Baylor v. United States,* 198 Ct.Cl. 331 (1972), the General Services Administration attempted to offset guards' overtime claims by deducting their lunch period from the regular workday. Although *Baylor* was brought under the Federal Employees Pay Act (the FEPA), the Claims Court

---

1. In 1987, the Texas Legislature amended section 6A without regard to the repeal of article 1269p and its recodification in section 142.-001(j), (k), and (*l*) of the Local Government Code. The 1987 amendment contains language virtually identical to that portion of section 785.-19(a) that precedes this footnote. The amendment became effective September 1, 1987, which postdates the period for which the officers and other department employees claim overtime compensation.

subsequently held that the FEPA and the FLSA were *in pari materia.* *Agner v. United States,* 8 Cl.Ct. 635, 637 (1985). Consequently, when determining whether certain periods constitute work, the same standard applies.

In *Baylor,* the evidence showed that the majority of guards were assigned to "one-man" buildings. They were stationed at a fixed post in the building during the entire shift, and many of the guards took their lunches with them to their posts. Lunch was eaten either "on the run," often on a piecemeal basis, while making patrols, while performing other assigned duties, or at their duty posts during irregular and unscheduled periods when an opportunity presented itself while performing their work assignments. During lunch they were required to sign persons in and out of the building and examine passes, check trucks and other vehicles entering and leaving at gates and garages, and answer the telephone. Most of the guards were interrupted on more or less frequent occasions while taking lunch breaks. *Baylor,* 198 Ct.Cl. at 363. The court held that the General Services Administration could not offset the lunch periods against other paid time.

With respect to a minority of the guards, the court came to a different conclusion. These guards were regularly relieved for lunch, although at irregular times, during which periods they did not perform scheduled duties. The court said: "[I]t is clear that when employees are afforded a definite 'duty free' lunch break of specified duration where they do nothing but eat and rest, such lunch break is offsettable." *Baylor,* 198 Ct.Cl. at 364. The court added that merely because the guards were required to eat their lunch on the employer's premises and to be on duty status and subject to emergency call did not convert this private leisure time into compensable time. The court concluded that when an employer makes lunch breaks available and the employee actually takes advantage of the lunch break, the employer may offset such time against compensable preshift or postshift hours of work; furthermore, this result applied even when such break time

was not regularly scheduled so long as it was regularly taken and even though the employee was subject to emergency call unless the employee showed that responding to such calls substantially reduced his duty-free time.

In *Agner v. United States,* 8 Cl.Ct. 635 (1985), present and former members of the Special Police Force of the Library of Congress sought a determination that their lunch breaks were not duty free and that their lunchtime could not be offset against uncompensated preshift and postshift work to deprive them of overtime pay. During their lunch break, the officers were relieved from their posts but were officially on duty and subject to call.

During their lunch break, the officers were required to remain on the library premises, in uniform, and in possession of their firearms. The officers generally carried two-way radios, which had to be kept on during lunch, and had to answer any calls from supervisors, either in person or over the radio.

The court noted that both the FLSA and the FEPA applied to the case. The court held that the statutes were *in pari materia* and that the same rules applied when determining "hours worked." Relying on *Baylor,* the court granted the employer's motion for summary judgment.

## B.

The police department officers and employees cite four cases, all of which are from state courts other than Texas. We consider these four cases and find them both distinguishable and unpersuasive.

In *Los Angeles Fire & Police Protective League v. City of Los Angeles,* 23 Cal. App.3d 67, 99 Cal.Rptr. 908 (1972) (*L.A.F.P. P.L.*), police officers sued the City of Los Angeles to determine their right to compensatory pay, including overtime for their lunch period, *under city ordinances.* In that case, the officers were not allowed to eat at home, there was no evidence of the frequency of interruptions, and no evidence of the measures taken to prevent interruptions. The court held that the lunch break

was work time but also held that the lunch break was noncompensable under the current city ordinance.

In *Madera Police Officers Association v. City of Madera*, 36 Cal.3d 403, 682 P.2d 1087, 204 Cal.Rptr. 422 (1984) (*Madera*), the California Supreme Court heard facts similar to *L.A.F.P.P.L.*, but in this case the officers sued under California state law, local ordinances, and the FLSA. The court in *Madera* held that meal breaks were compensable pursuant to California state and local law and declined to rule on whether the officers' claims were compensable under the FLSA.

The Arizona Court of Appeals reviewed the issue of meal breaks as compensable time in *Prendergast v. City of Tempe*, 143 Ariz. 14, 691 P.2d 726 (Ct.App.1984). In this case the court held that the meal breaks were compensable because they primarily benefitted the employer.

Finally, in *Weeks v. Chief of Washington State Patrol*, 96 Wash.2d 893, 639 P.2d 732 (1982), a member of the state patrol apparently sued under state law, and the court held that federal cases interpreting FLSA provisions similar to the state provisions were not binding.

We are not persuaded by the reasoning of those cases. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). *L.A.F.P.P.L.* was based on the Los Angeles city ordinances. *Madera, Prendergast,* and *Weeks* were all decided under state law. None of the cases was decided pursuant to the FLSA, and the decisions of state courts other than our own are not binding on this Court. These state cases require an employee to be *completely* relieved from duty before the lunch period becomes noncompensable. Federal case law requires more than simply some restrictions to make a meal break compensable. *See Hill*, 751 F.2d at 810; *Agner*, 8 Cl.Ct. at 635; *Baylor*, 198 Ct.Cl. at 364–65. Both Federal and Texas case law have required more than merely being on call to make such status compensable. *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369 (5th Cir.1987) (FLSA); *Agner*, 8 Cl.Ct. at 635; *Baylor*, 198 Ct.Cl. at 364–65; *City of*

*Dallas v. Spainhouer*, 758 S.W.2d 611 (Tex.App.–Dallas, 1988, writ pending) (en banc) (art. 1269p). For these reasons, we recognize that other state courts have disagreed but find the police department employees' cases unpersuasive.

An additional case cited by the police department employees is *Lindell v. General Electric Co.*, 44 Wash.2d 386, 267 P.2d 709 (1954). In that case, guards at a government-owned plutonium plant sought compensation for their lunch period under the FLSA. Evidence showed that the guards during their thirty-minute lunch break were required to open the main gate, escort dry-ice deliveries, regulate the radio, go to fires, drive ambulances, gas up cars, relieve other guards, and respond to emergencies. The guards on lunch break were the pool of workers used to perform these tasks for the supervisors. The court held that the guards were working during their lunch break.

*Lindell* is not applicable to the facts in this case because the police officers were not required to be in a pool to perform odd jobs for their supervisors during their meal breaks. To the contrary, the City made efforts to insulate the officers from interruptions by having dispatchers route the calls to other available officers, supervisors, and lieutenants, permitting officers on meal break to enjoy their meal.

Both parties rely on the same case for the appropriate standard as to what is compensable time under the FLSA, namely, *Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283 (5th Cir.1969), *cert. denied*, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970). In that case, the court stated that when determining whether idle time is compensable, a court should consider two factors: first, whether the employee spends the time predominantly for his own benefit or for his employer's benefit; second, whether the time is of sufficient duration and taken under such conditions that it is available to the employee for his own use and purposes disassociated from his employment time. *Blum* recognized that the articulated standard merely presented "two factors to be considered" and that resolu-

tion of the issue was "basically a fact question, to be gleaned from all the facts and circumstances of each case."

The United States Supreme Court has recognized that "waiting time" cases are resolved by factual—not legal—analysis by saying:

> We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by the appropriate findings of the trial court.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

With respect to section 6A of article 1269p, the standard that determines whether a meal break is compensable is a question of first impression. We perceive no reason to devise a different standard from the one that applies to the FLSA; therefore, we will apply the same two-prong analysis of *Blum* for both the FLSA and article 1269p claims. We recognize that no precise legal formula is possible. *Skidmore*, 323 U.S. at 136, 65 S.Ct. at 162.

We adopt the two-prong analysis of *Blum*: (1) Does the employee spend the meal break predominantly for his own benefit or for his employer's benefit? (2) Is the break of sufficient duration and taken under such conditions that it is available to the employee for his own use and purposes disassociated from his employment time? *Blum*, 418 F.2d at 284.

The key question in answering prong number one is whether the employee is required to eat at his post. 29 C.F.R. § 785.19(a). Where an employee eats at his post, *i.e.*, his desk or his machine in a factory, then his time is primarily spent for the benefit of his employer. Where an employee can pursue his meal break adequately and comfortably and is not engaged in the performance of any substantial duties, he spends his time predominantly for his own benefit. *See Hill*, 751 F.2d at 814; *Agner*, 8 Cl.Ct. at 635.

In this case, the police officers were not eating their meals while patrolling in their police cars nor while sitting at a desk in the stationhouse filling out paperwork. The mealtime break is not predominantly spent for the benefit of the City. *Fort Worth Stock & Sons, Inc.*, 194 F.2d at 496; *Baylor*, 198 Ct.Cl. at 364–65. The officers regularly took their lunch break.

Under the second prong of *Blum*, for a meal break to be noncompensable, it must be of sufficient duration and taken under such conditions that it is available to the employee for his own use and purposes disassociated from his employment time. Forty minutes is a sufficient length of time for a meal break. 29 C.F.R. § 785.19(a). The facts show that the City made every effort to see that the officers were regularly allowed to enjoy their meal breaks without interruptions.

### III.

We agree with the City that there is no evidence that any of the officers incurred overtime for which they were not properly compensated. The evidence did show that while the officers were on lunch break they were subject to certain restrictions and were on call, but that evidence alone does not make such time compensable. *See Hill*, 751 F.2d at 810; *Spainhouer*, 758 S.W.2d at 611 (Dallas Court of Appeals—art. 1269p). For periods during which officers are actually called, we agree that they are entitled to compensation. In this case, there is no evidence that the specific interruptions were anything more than *de minimus* interruptions, *see Hill*, 751 F.2d at 815, or that such interruptions substantially reduced the officers' lunch break. *Baylor*, 198 Ct.Cl. at 365. Since we hold the meal break noncompensable, it follows that the detail time is offset by the meal break. The City's points of error numbers one through seven are all sustained.

In point of error ten, the City argues that the trial court erred in awarding plaintiffs attorney's fees for the trial of this cause pursuant to the Fair Labor Stan-

dards Act. Section 216(b) of the FLSA provides that the court shall award attorney's fees to the prevailing plaintiffs. 29 U.S.C.S. § 216(b) (Supp.1988). Since we reverse and render in favor of the City, the police officers have not prevailed; therefore, we sustain the City's tenth point of error.

In cross-point one, the police department officers argue that they are entitled to liquidated damages pursuant to section 216(b) of the FLSA. The City now prevails, and there is no basis upon which to award the officers liquidated damages. The police officers' cross-point is overruled.

We reverse the trial court's judgment and render judgment that the police officers and other department employees take nothing.