Charles G. WAHL, Dale E. Coffman, Richard A. Alvarez, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

The CITY OF WICHITA, KANSAS, Defendant.

No. 88-1424-K.

United States District Court, D. Kansas.

Nov. 13, 1989.

Ray E. Simmons, and Ken M. Peterson, Robert W. Coykendall, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for plaintiffs.

Thomas R. Powell, City Atty., Ed L. Randels, Asst. City Atty., Wichita, Kan., and Walter V. Siebert, Sherman and Howard, Denver, Colo., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The plaintiffs in the present action are present and former police officers of Wichita, Kansas. The plaintiffs contend that the defendant, the City of Wichita, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to provide compensation for the time spent by the officers during their meal breaks. They contend that the city also violated the FLSA by denying overtime pay to officers completing reports and performing other activities after the end of their shifts.

The parties have now filed opposing summary judgment motions. The plaintiffs have moved for partial summary judgment, seeking a determination that the city's actions violated the FLSA's overtime pay requirements. The plaintiffs would leave for trial the issue of whether the city's alleged violation was willful in nature. If a defendant willfully violates the FLSA, it may be subject to liquidated damages pursuant to 29 U.S.C. § 216, and the applicable statute of limitations is expanded from two years to three years, 29 U.S.C. § 255(a).

The city has also moved for summary judgment. The city contends that the plaintiffs are not entitled to overtime pay under the FLSA, and therefore seeks a determination that it did not violate the act in failing to compensate the plaintiffs for their time spent during meal periods. In addition to the general contention that the FLSA's overtime pay requirements do not apply to the plaintiffs' meal periods, the city presents two additional arguments. First, it argues that any overtime worked less than 15 minutes in length, either during the meal periods or after the completion of a shift, is *de minimis* and hence not

compensable. Second, it argues that even if the plaintiffs were otherwise entitled to the overtime pay at issue, recovery here is barred because the plaintiffs failed to report the work and file appropriate requests for overtime pay. Finally, the defendant seeks summary judgment against the liquidated damages claim of the plaintiffs, and a determination that the two, rather than three, year limitations period is controlling.

### Findings of Fact

Summary judgment is proper, where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

■ In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a

*genuine issue for trial.'"* *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). From the affidavits, depositions, and answers to interrogatories submitted to the court, the following facts may be found not to be uncontroverted.

The plaintiffs are 268 current or former police officers employed by the City of Wichita, Kansas since April 15, 1986. The terms of the officers' employment were established in a series of Memoranda of Agreement reached by the city and the Fraternal Order of Police, Lodge No. 5. These memoranda apply to the period from December 28, 1985 to January 5, 1990.

The Memoranda of Agreement provide that officers who work in excess of 40 hours per week should receive overtime pay at the rate of one and one-half times their regular rate of pay. The memoranda also provide that officers may take, without pay, one 30–minute meal period during their 8½ hour shift.

In addition to general personnel rules and regulations, the officers' activities during the meal period are limited by unwritten, informal rules enforced by the officers' supervisors. It its brief in support of its motion for summary judgment, the defendant contends that the written policy on meal periods introduced on October 16, 1987 supplants any contrary unwritten rules. The defendant provides absolutely no factual support for this assertion. Nor does the defendant deny the existence of unwritten meal period policies in its response to the plaintiffs' motion for summary judgment, or offer any proof that these policies are no longer enforced.

When an officer wishes to take his meal break, he must contact a dispatcher. The officer may not request a meal break during the first two hours of his shift. The dispatcher may grant the request, subject to weather conditions, the availability of other officers on patrol in the "team area" assigned to the officer, and the level of the police call load. If the dispatcher is unable to grant the request, he will attempt to do so at a later time.

The officers are subject to geographical limitations during their meal period. Unless they receive special permission, the officers may not leave their team area while they are on break. Thus, unless their home is within their assigned team area, most police officers must spend their meal period away from home. Traffic safety officers, who patrol the entire city, may go home for their meal break if their home is in the city. Beginning on October 16, 1987, the officers' travel time to the place where they take their meal break is included within the 30 minutes allotted for the break. In addition, the officers have been required since that date to log the beginning and ending time of their meal periods. An officer who leaves his team area on his meal break without obtaining special permission risks disciplinary action.

In addition to the general geographic limitations on where an officer may spend his meal period, there are also several specific limitations. When the officer is on his meal break, he must remain in radio contact or be available by telephone. Thus, officers may not take their meal break in buildings whose structures inhibit the function of their radio and in which telephones are not accessible to the officers to receive emergency calls. For public relations purposes, only two police vehicles are allowed at any one location, and "no more than a few" officers are permitted in the same restaurant. Finally, several specific locations have been declared off limits. Meal periods may not be taken in a tavern, private club, or pool hall. From time to time, specific restaurants have been proscribed.

While the officers are on their meal break, they remain subject to emergency calls. The failure of an officer to respond to an emergency call during his meal period may subject the officer to review and disci-

pline. Officers are also expected to respond to crimes committed in their presence.

Officers are often approached by citizens during the officers' meal break. These citizen-police officer communications may last from five to ten minutes, or longer. The officers are expected to respond to any emergencies reported by a citizen, and must treat citizens respectfully during the meal period. Police officers have been instructed that they must respond to citizens' requests during meal periods, or risk disciplinary action. If an officer ignores citizen requests during his meal period, he may be reprimanded or laid off. Because citizen contact is so frequent, two officers testified that they have attempted to find more isolated areas in which to take their meal break. Practical considerations involving the use and care of their vehicles prevent most officers from carrying a homemade lunch in police vehicles.

While there is no formal policy requiring that officers remain in uniform during their meal period, one officer has testified that officers are informally expected to stay uniformed. Moreover, the limited duration of the meal period, combined with other limitations on the officers' activities, effectively prohibits the changing to civilian dress in all but a few instances. Thus, as a practical matter, most officers are forced to remain in uniform during the meal period. By wearing his uniform during the meal period, the officer incurs additional responsibilities. An officer in uniform, whether on duty or not, is expected by the city and the police department to conduct himself "in a highly professional manner."

Additional restrictions have been imposed on what an officer may read during his meal period. Many officers are not permitted by their supervisors to read any material during their meal break that is unrelated to their official police duties. If they are in a police vehicle, the officers are not permitted to have any "extraneous" reading material. As noted earlier, the majority of the city's police officers believe they are on duty during their meal period.

Rule 3.609 of the police department's regulations expressly provides that an officer on duty may read only "such materials that relate only to official police duties." Nonetheless, one officer has testified that after October, 1987 he has been allowed by his supervisors to read a newspaper during his meal period.

The officers are subject to similar limitations on their ability to rest during the meal period. There is no express prohibition against sleeping during the meal period, and one officer has testified that his supervisor would permit his taking a nap. Practical circumstances, however, bar the officers from napping during the meal period. The officers are expected to monitor their radio. If the officer falls asleep and fails to respond to a radio call, he may be subject to discipline.

The brief nature of the meal period also restricts the ability of the officers to perform personal business. The officers may not perform any personal business during the meal period if it requires the use of their police vehicle. Several officers have testified that they may not use bank drive-throughs or bank ATMs to get money. In general, officers are precluded from performing all but the briefest of personal activities.

In addition, a number of officers have testified to specific limitations which have been imposed on their personal activities during the meal period. They may not be accompanied by their wife. They may not go shopping. They may not get a haircut or go to the doctor or dentist. They may not play pinball, video games, or watch TV.

The officers are expected to execute written reports. At times, circumstances may require an officer to occupy his meal period with the completion of these reports. At other times, the paperwork expected of the officer can only be completed after the end of his work shift.

An officer who has missed all or part of his meal period, or who works post-shift to complete necessary reports, may file a request for overtime. The procedures for requesting overtime are not complex, and most formal requests for overtime pay

have been granted. The plaintiffs contend that the defendant informally discourages the submission of overtime pay requests. While there is no express policy excluding overtime pay for post-shift paperwork, officers who have requested overtime pay may get "called down" the next day. One officer was told that missing a meal period "builds character." Some officers believe that they cannot expect overtime pay for periods of less than 15 minutes. Others believe that it is necessary to work overtime for 30 minutes or an hour before they can expect to be compensated.

The officers' supervisors have the discretion to approve or disapprove overtime pay requests. One police supervisor, who retired December 1, 1986, would not approve overtime if the work could have been performed during on-duty hours.

### Conclusions of Law

1. Compensability of Meal Periods

In *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court overruled its earlier decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and held that the provisions of the FLSA were applicable to states and municipalities. Under subsequent legislation, Congress made April 15, 1986 the effective date of the FLSA's application to state and local governments. Pub.L. 99–150, 99 Stat. 787 (1985). In the present case, the plaintiffs contend that the city has been in violation of the overtime pay requirements of the FLSA, 29 U.S.C. § 207, since that date.

■ It is not essential that the employee perform physical or mental exertion to create a right to compensation under the FLSA. "[A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). In *Armour*, the Court held that private fire fighters employed by a soap manufacturer were entitled to compensation for their time spent on call for emergencies. In reaching this conclusion, the Court recog-

nized that "[r]efraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself...." 323 U.S. at 133, 65 S.Ct. at 168.

The administrative regulations adopted to help define the scope of the FLSA define the compensability of employee meal periods in 29 C.F.R. § 785.19.

(a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

(b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19 (citations omitted).

The defendant argues that administrative regulations interpreting the FLSA are not binding on the courts, and essentially asks the court to discard the interpretation of worktime contained in 29 C.F.R. § 785.19. It is correct that the ultimate interpretation of the FLSA is left to the courts, as expressly recognized by the regulations themselves. 29 C.F.R. § 785.2. The regulations are designed to serve as a guide for employers and employees. *Skidmore v. Swift*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Hill v. United States*, 751 F.2d 810, 813 (6th Cir.1984).

■ But while the administrative interpretation contained in § 785.19 may not be binding on the court, it nonetheless offers a

useful and fair standard by which to determine whether a meal period should be considered worktime under the FLSA. In *Skidmore*, the Supreme Court recognized that while administrative interpretations of the FLSA are "not controlling upon the courts by reason of their authority," they nonetheless serve as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." 323 U.S. at 140, 65 S.Ct. at 164. Thus, while not being bound by the administrative regulations, several courts have been persuaded to adopt the "completely relieved of duty" standard contained in § 785.19 as an appropriate statement of the law. *See, e.g., Donovan v. Bel–Loc Diner, Inc.*, 780 F.2d 1113, 1115 n. 1 (4th Cir.1985); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir.1975); *Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d 84, 88 (9th Cir.1975); *Dole v. Solid Waste Services, Inc.*, No. 88–1066, 1989 WL 79115 (E.D.Pa., July 14, 1989); *Brock v. Claridge Hotel and Casino*, 664 F.Supp. 899, 907–908 (D.N.J.1986), *remanded on other grounds*, 846 F.2d 180 (3d Cir.1988); *Blain v. General Elec. Co.*, 371 F.Supp. 857, 862 (W.D.Ky. 1971). The Tenth Circuit has recognized that the administrative regulations adopted pursuant to the FLSA "are entitled to great weight and should not lightly be set aside." *Mitchell v. Greinetz*, 235 F.2d 621, 625 (10th Cir.1956). In the present case, the defendant has advanced no valid reason to disregard the meal period standards contained in § 785.19, and those standards will be applied in the present case.

■ In the present case it is clear that the plaintiffs were not completely relieved of their duties. Indeed, the plaintiffs were subject to significant affirmative responsibilities during their meal period. In addition to geographic limitations on where they could, and could not, take meal breaks, the officers were restricted in their association with certain persons during their meal periods. The officers could not eat in certain restaurants and could not eat in other restaurants where several other police officers or police vehicles were already present. At least one officer was prohibited from going to lunch with his wife.

While on their lunch breaks, most officers consider themselves on duty. And they remain subject to the risks which uniformed police officers must face. They are required to monitor their radio, or be available by telephone. The officers must respond to any criminal acts they observe while they are on their meal period. The officers are subject to frequent contact with citizens. They are required to respond appropriately and courteously to civilian requests, or risk disciplinary action. Departmental regulations and supervisors' orders limit the ability of the officers to read during their meal period.

The officers must also submit to additional restrictions on their personal conduct during the meal break. They may not use their police vehicle for personal matters. Some police officers have been prohibited from going through bank drive-throughs or using ATMs during their lunch break. Others have been prohibited from watching television, playing pinball or video games.

All of these restrictions produce benefits for the defendant. The public image of an efficient, alert police force is maintained. By requiring officers to remain in their beat areas, the defendant can maintain a pool of officers available for emergency situations, relieving it from the necessity of employing additional personnel. Because the plaintiffs are subject to such serious and substantial limitations and duties during their meal periods, they are entitled to compensation for those periods under the FLSA.

Several cases support this conclusion. In *Biggs v. Joshua Hendy Corp.*, 183 F.2d 515, 520 (9th Cir.1950), the Ninth Circuit held that an employee who was on call during his lunch periods was entitled to compensation under the FLSA. Similarly, in *Weeks v. Chief of Wash. State Patrol*, 96 Wash.2d 893, 639 P.2d 732 (1982), the court concluded that Washington state troopers were entitled to compensation for their meal periods. The troopers were given a one-hour lunch break, and were permitted to go anywhere within their beat

area. They were required, however, to remain on call and to remain available by radio or telephone. 639 P.2d at 733, 734. Although the case itself was decided under Washington state law, the court relied on 29 C.F.R. § 785.19 and earlier FLSA decisions, which "also represent the intent of our law." 639 P.2d at 734. The court concluded that the time spent during these lunch periods must be considered work and that the troopers were entitled to compensation.

In its earlier order denying the defendant's motion to dismiss, the court noted its agreement with the analysis of Judge O'Connor in *Nixon v. City of Junction City*, 707 F.Supp. 473 (D.Kan.1988). 701 F.Supp. at 1535. In *Nixon*, the plaintiffs were officers of the Junction City, Kansas police force. The, plaintiffs contended that the city had violated the FLSA by failing to extend overtime compensation for their half-hour, in-shift meal periods. The court concluded that the meal periods were compensable under the FLSA. 707 F.Supp. at 477.[1]

The court listed the numerous restrictions which had been placed on the officers' meal periods, most of which are also present here. The city had established limits on when and where the lunch break could be taken. The officers remained on call and in uniform. They were also required to respond to any criminal activities they observed during the meal period. 707 F.Supp. at 474–475.

The court concluded that the limitations placed on the officers' meal periods required compensation under the FLSA. Adopting the standard contained in 29 C.F.R. § 785.19, the court stated that compensation was necessary unless the officers were completely relieved of duty during their meal period. 707 F.Supp. at 477–478.

We find that they are not. Although the officers may eat anywhere within the corporate limits of Junction City, they must inform the dispatcher of their location and must continue to monitor their portable radios or be reachable by telephone. By remaining available for calls, the officers are not completely relieved of duty. Additionally, as a practical matter, the officers must remain in uniform and armed during their lunch periods and must continue to perform the duties that they perform throughout their shift, *i.e.*, observing, being observed, and responding to emergencies, crimes and citizens. Thus, the officers are not completely relieved of duty. Although they may infrequently be required to take affirmative action during their lunch periods, the court has determined that these officers are nevertheless on duty during their lunch periods simply because they are required to take appropriate action whenever the need arises. Despite the fact that officers are allowed to attend to personal activities during their lunch periods, the deposition testimony left the court with the impression that the defendant discouraged such activities and made it impractical to run personal errands (*e.g.*, the officers are not allowed to use the patrol cars for personal business). Consequently, the court accords little weight to the fact that officers can spend their lunch periods as they please. Whether the officers use their lunch periods to eat, to rest, or to attend to personal business, they still must remain on call and available to respond as though they were on patrol.

707 F.Supp. at 478 (citations omitted).

Although, as noted above, the issue of compensability in *Nixon* was later "reactivated" for trial, the case is markedly similar to the present case and remains instructive. Of the limitations of the officers' meal periods listed by the court in *Nixon*, only the last, No. (11) in *Nixon*, is

---

1. On defendant's subsequent motion for reconsideration, Judge O'Connor held that "[a]lthough the defendant's motion did not convince the court to reconsider its conclusion that patrolmen's lunch periods are compensable time, the court has decided that, in an abundance of caution and in recognition of the importance of this decision to the practicing bar, it will 'reactivate' the issue of the compensability of patrolmen's lunch periods for trial." *See Wahl v. City of Witchita*, 701 F.Supp. 1530, 1535 n. 3 (D.Kan.1988). The case was subsequently dismissed prior to trial.

not also present here. In *Nixon*, a supervisor assigned meal times to patrolmen at the beginning of the shift. Here, the police officers call in to request permission to take their meal period. The request may not occur during the first two hours of the shift. If no meal period has been taken prior to the last two hours of the shift, he must notify a supervisor who will then assign a meal period.

Otherwise, the restrictions here are generally greater than those present in *Nixon*. In the present case, not only may the officers not meet for lunch with patrolmen from other beat areas, they may not leave their own beat area at all without special permission. They face limitations on their ability to read during their meal period. The frequent contact with citizens in the present case is not mentioned in *Nixon*.

The defendant contends that the meal periods are not compensable as time worked, and cites the recent decision of the Kansas Supreme Court in *Atteberry v. Ritchie*, 243 Kan. 277, 756 P.2d 424 (1988). In *Atteberry*, the court ruled that sheriff's officers were not entitled to recover compensation for their in-shift meal periods. The case was decided on the basis of the negotiated employment agreement entered into by the parties. The compensability of the meal periods under the FLSA was not in issue. Thus, Judge O'Connor found in *Nixon* that *Atteberry* was "easily distinguishable," and did not bar a claim for overtime compensation under the FLSA. 707 F.Supp. at 478. In its earlier order denying the defendant's motion to dismiss, this court agreed, finding *Atteberry* inapplicable to the present action.[2] *Wahl v. City of Wichita*, 701 F.Supp. 1530, 1535 (D.Kan.1988). *Atteberry* remains inapposite, and does not alter the conclusion that the plaintiffs' meal periods are compensable under the FLSA.

The defendant relies in particular on the decision of the Sixth Circuit in *Hill v. United States*, 751 F.2d 810 (1984). In *Hill*, the court held that the FLSA did not require the Postal Service to provide overtime pay for the one-half hour meal period provided to the letter carrier plaintiff. The court found that the letter carrier was not "required to perform any activities that could be characterized as substantial duties," and rejected the claim. 751 F.2d at 814.

The court found that the plaintiff's obligation to secure the mail carried in his postal vehicle, account for monies obtained for COD deliveries prior to the meal break, and any "occasional interruptions by postal patrons" during any meal period did not create substantial duties requiring the use of time for his employer's benefit. 751 F.2d at 814–815. The interruption of the plaintiff's meal periods by members of the public were infrequent, and the plaintiff was not required to accept mail or sell stamps to citizens during his meal period. 751 F.2d at 815. Nor, the court noted, was the plaintiff "required to exercise constant vigilance; he can eat comfortably without having to check his pockets regularly or be otherwise distracted from his meal." *Id.*

The obligations placed on the plaintiffs in the present case are substantial in nature and require the plaintiffs to limit their activities for the benefit of their employer. Unlike the plaintiff in *Hill*, the police officers in the present case must exercise constant vigilance during their meal period. A lack of vigilance may result in disciplinary action—or the loss of life. They must respond to police radio or telephone communications. They must react to crimes committed in their presence. And they must deal with citizen complaints and requests, which are not infrequent, or risk disciplinary action.

---

**2.** In its present motion, the defendant argues that *Atteberry* is controlling, contending (incorrectly) that in the court's earlier order it found that the case "addressed state law, not the FLSA." (Def. Memo. at 20). It then argues that the distinction is incorrect, stating that the meal period requirements of the Kansas Minimum Wage Maximum Hours Law (KMWMHL), K.S.A. 44–1201 *et seq.*, and its corresponding administrative regulations are essentially similar to FLSA. The defendant's argument is false. *Atteberry* was not decided under the KMWMHL. Rather, the court decided that overtime pay was not required for the meal periods under "[t]he negotiated agreements in this case." 243 Kan. at 286, 756 P.2d 424. The FLSA was not remotely at issue in *Atteberry*.

The defendant also relies on a series of cases involving security guards, in which the courts have held that meal breaks taken by the guards are not subject to overtime pay compensation requirements. *See Kaczmerak v. Mount Sinai Medical Center*, 28 Wage & Hour Cas. 1165 (BNA), 1988 WL 81633 (E.D.Wis.1988) (hospital security guards); *Agner v. United States,* 8 Cl.Ct. 635 (1985), 27 Wage & Hour Cas. 515 (BNA), *aff'd,* 795 F.2d 1017 (Fed.Cir.1986) (Library of Congress security officers); *Baylor v. United States*, 198 Ct.Cl. 331 (1972) (General Services Administration building guards). None of the cases cited by the defendant is relevant or controlling here.[3] Moreover, the defendant's argument ignores other cases which have found that the meal times of security guards are compensable.

In *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981 (8th Cir.), *cert. denied*, 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952), the Eighth Circuit found that security guards and firemen employed by the manufacturer defendant were entitled under the FLSA to compensation for their meal periods. The guards were required to remain on duty and exercise "constant vigilance" during the meal period. 197 F.2d at 983. That emergencies interrupted the meal period only on an infrequent basis was not controlling. What was important, the court found, was whether the plaintiffs "were performing their regular duties during that period and were then substantially performing the duties assigned to them by their employer and were not free to follow pursuits of a purely private nature." 197 F.2d at 984. The court found that the duty status and continued vigilance expected of the plaintiffs were restrictions which established a right to compensation under the FLSA. *See also Loveday v. Camel Mfg. Co.*, 326 F.Supp. 1388 (E.D.Tenn.1970) (warehouse night watchman who was on duty during lunch break was entitled to compensation under FLSA).

In *Lindell v. General Electric Co.*, 44 Wash.2d 386, 267 P.2d 709 (1954), security patrolmen at a government plutonium plant sought compensation under the FLSA for their meal period time. The court found that the time was compensable, since "the patrolmen were not free agents and under no restrictions whatsoever. They were under the domination and control of their supervisors and were subject to be called out on a moment's notice." 44 Wash.2d at 394, 267 P.2d 709.

The Nebraska Supreme Court addressed the issue in *Banks v. Mercy Villa Care Center*, 225 Neb. 751, 407 N.W.2d 793 (1987). In *Banks*, a retirement home security guard brought an action to receive compensation for the half-hour period at the end of his shift, during which he normally ate his breakfast. The guard was relieved of his primary responsibilities during this period, but was expected to remain on the premises. Besides eating breakfast, he usually read the newspaper, but occasionally assisted residents and checked the grounds. 407 N.W.2d at 795. The court rejected the employer's argument that the half-hour was designated as a meal period, and constituted bona fide meal time under the FLSA. "No matter how much time is designated as a meal period," the court held, "if an employee is not free to follow pursuits of a purely private nature or the time is spent predominantly for the employer's benefit, the designated time is not a bona fide meal period." 407 N.W.2d at 797.

But the cases cited by the defendant are also distinguishable on the facts. As Judge O'Connor recognized in finding *Agner* factually distinguishable, "the duties of a guard at the Library of Congress and the duties of a patrolling police officer are not comparable." *Nixon*, 707 F.Supp. at 478. There is no indication in *Kaczmerak, Agner,* or *Baylor* that the security guards involved in those cases were subject to frequent contact with individual citizens

---

**3.** In addition to being clearly distinguishable, these cases are of doubtful authority. *Kaczmerak* simply relies on *Agner* which relies on *Baylor*. In none of the cases is there any extensive analysis. All essentially ignore the "completely relieved of duty" requirement of 29 C.F.R. § 785.19, and the Supreme Court's recognition in *Armour* that an employer may hire "[r]eadiness to serve[,] quite as much as service itself." 323 U.S. at 133, 65 S.Ct. at 168.

during the meal period. The court noted in *Kaczmerak* that interruptions of the guards' lunch periods were not frequent. 28 Wage & Hour Cas. at 1166. Nor is there any indication in any of the cases that the guards were expected as a part of their employment to respond to citizen requests made during the meal period.[4] In the present case, on the other hand, the police officers are subject to frequent contact with citizens during their meal periods. Moreover, they are expected to respond to citizen requests and face potential disciplinary action for the failure to respond appropriately and courteously.

In addition, in none of the cited cases were the security guards subject to significant additional restrictions on their personal activities during their meal break. In *Baylor,* the court found that the lunch break of the building guards was essentially "private leisure time." 198 Ct.Cl. at 364. In *Agner,* while the security guards were on call, they were otherwise permitted to "eat, rest, or engage in any other appropriate personal activity." 8 Cl.Ct. at 638, 27 Wage & Hour Cas. at 517. And in *Kaczmerak,* while the security guards were required to monitor their radios, the court found that they were not thereby "unable to do anything else," and were free to go anywhere on the hospital campus during their meal break, including cafeterias, break rooms, and television lounges. 28 Wage & Hour Cas. at 1167.

In the present case, the plaintiffs are subject to significant restrictions on their personal activities during the meal break. In the prohibition of "extraneous" reading material from police vehicles, they are limited in what they may read. They may not use their police vehicles for personal reasons. There are restrictions in their ability to conduct personal business. According to the uncontroverted facts before the court, supervisors have barred police officers from being accompanied by their spouses during the meal break, from watching television, from playing pinball and video games.

As uniformed police officers, the plaintiffs continue to incur the responsibilities—and risks—that inhere in their public service. They are subject to significant restrictions on their personal freedom. Accordingly, their time spent on meal periods must be considered time in which they are "suffered or permitted" to work with the meaning of the FLSA.

Finally, the defendant relies on *City of University Park v. University Park Police Association,* 766 S.W.2d 531 (Tex.Ct.App. 1989), in which the Texas Court of Appeals found that the forty-minute meal period accorded to the plaintiff police officers was not compensable worktime under the FLSA. This court finds that *University Park* is not controlling in the present action. First, the cases are factually distinguishable. The restrictions placed on the plaintiffs in *University Park* are significantly less than those faced by the plaintiffs in the present action. The plaintiff officers in *University Park* had to remain in uniform and monitor their radios during the meal period. Otherwise, they could take their meal break anywhere in the city, and were not limited to their beat area. The officers were not subjected to limitations on what they might read during the meal period. There was no limitation on the personal activities or business of the officers during the meal period. There is no mention in the case of the frequency of citizen contact with the officers, or that the officers were expected to respond appropriately to those contacts.

Moreover, the decision itself is not persuasive. In reaching its conclusion, the Texas court relied on cases such as *Hill, Agner,* and *Baylor,* which are of dubious relevance and doubtful authority in the present context. The court ignored the "completely relieved of duty" standard of 29 C.F.R. § 785.19, without citing any reason for the abandonment of the regula-

---

**4.** In *Kaczmerak,* the court noted that assistance provided by the security guards to hospital visitors was voluntary in nature. The guards' supervisors had not instructed them to assist visitors during their lunch period. Indeed, the court noted that the supervisors had instructed the guards *not* to respond to visitor requests during the lunch period. 28 WH Cas. at 1166.

tion.[5] And while the court cited with approval the two-part standard of *Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283 (5th Cir.1969),[6] it applied the standard in a markedly abbreviated fashion. The court essentially concluded that the location and length of the officers' meal periods were controlling:

> In this case, the police officers were not eating their meals while patrolling in their police cars nor while sitting at a desk in the station house filling out paperwork. The meal time break is not predominantly spent for the benefit of the City....
>
> Under the second prong of *Blum*, for a meal break to be noncompensable, it must be of sufficient duration and taken under such conditions that it is available to the employee for his own use and purposes disassociated from his employment time. Forty minutes is a sufficient length of time for a meal break.

766 S.W.2d at 537.

■ The identification of the predominant benefit of the meal time break with the geographic location of the break is facile and simplistic. Just as an employee's presence, in itself, on the employer's premises during the meal period does not establish a right to compensation, 29 C.F.R. § 785.19(b), so also the ability of the employee to take his break elsewhere does not render the meal time noncompensable where "he is required to perform any duties, whether active or inactive, during eating." 29 C.F.R. § 785.19(a). What matters in meal period cases is whether the employee is subject to real limitations on his personal freedom which inure to the benefit of his employer.

Although most police officers do not take their meal period in the stationhouse, they remain in uniform and in the public eye. The rules of the city, both written and unwritten, and the practical constraints arising from the limited length of the break, combine to ensure the city of a reserve of uniformed officers, immediately available for emergency service. The restrictions on the plaintiffs are designed to maximize the public appearance of the officers' readiness. The city receives the advantages of improved public relations and the elimination of the need to hire additional officers. But as these benefits accrue to the city, the officers are faced with corresponding limitations on their personal freedom. Because the officers were not relieved of duty during the meal period, the FLSA requires the city to provide compensation for the time spent during the meal period.

### 2. The Impact of Collective Bargaining Agreements

■ The defendant raises several additional arguments which will be addressed here and below. First, the defendant at several points stresses that the Memoranda of Agreement entered into by the defendant and the local branch of the Fraternal Order of Police do not mention the compensability of officers' meal periods. Moreover, the defendant emphasizes that the FOP never raised the issue of meal period compensability in the collective bargaining negotiations preceding the memoranda.

The defendant's argument is without merit. As the court previously recognized

---

**5.** The plaintiffs' claims in *University Park* were also predicated on an alleged violation of the relevant state statute, Tex.Rev.Civ.Stat.Ann. art. 1269p, § 6A (now Tex.Loc.Gov't Code Ann. § 142.001(j)–(*l*)). The Texas legislature had amended the statute to include language "virtually identical" to the standard contained in 29 C.F.R. § 785.19, but, as noted by the court of appeals, the amendment "postdates the period for which the officers and other department employees claim overtime compensation." 766 S.W.2d at 534, n. 1.

**6.** *Blum* did not involve a claim for meal-period compensation. Instead, it involved a claim

against a manufacturer by its workers for compensation for the "idle time" incurred during their shift. The Fifth Circuit applied a two-part test to determine the compensability of the idle time: "whether the time is spent predominantly for the employer's or employees' benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time." 418 F.2d at 418. *See also Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir.1956).

in its rejection of the defendant's motion to dismiss, the rights guaranteed employees by the FLSA are not rights subject to contract. Instead, those rights are independent of, and superior to, contract arrangements between employer and employee.

> [T]he court is not persuaded by the fact that the collective bargaining agreement provides for one 30–minute unpaid meal period per day. As plaintiffs point out, if the provisions of a pay plan or collective bargaining agreement run counter to the FLSA, the provision is to be given no effect. *See, e.g., Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 740–41, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981) (congressionally granted FLSA rights take preference over conflicting provisions in a collectively bargained compensation agreement). *See also Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d 148, 152 (5th Cir.1982); *Loveday v. Camel Manufacturing Co.,* 326 F.Supp. 1388 (E.D. Tenn.1970).

701 F.Supp. at 1535.

3. On Call Cases

In addition to cases involving the compensability of meal periods, the defendant also cites to several decisions involving on-call employees. *See Boehm v. Kansas City Power and Light Co.,* 868 F.2d 1182 (10th Cir.1989) (power linemen); *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir.1988) (van drivers); *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir.1987) (pipeline maintenance employees). At issue in each of these cases was whether the employees' "waiting time" was compensable under the FLSA. The cases center on the factual issue, recognized by the Supreme Court in *Skidmore,* of whether "the employee was engaged to wait, or … that he waited to be engaged." 323 U.S. at 137, 65 S.Ct. at 163.

The on-call cases cited by the defendant are both legally irrelevant and factually distinguishable from the present case. The cases do not address the legal issue present here, whether time spent on employee meal periods is compensable under the FLSA.

Rather, the cases address the issue of whether the general waiting time of emergency workers or on-call personnel was "time worked" under the FLSA, or whether the workers were simply "waiting to be engaged."

Thus the facts presented in the cited cases are wholly unlike those in this case. In *Boehm,* the plaintiffs were free to leave their employer's premises. The employees "were free to use their off-duty time as they wished, provided that they could be contacted and report for work one-third of the time that they were called." 868 F.2d at 1185. In *Norton,* the plaintiff van drivers were also free to leave their employer's premises, and were free to pursue personal business between assignments. 839 F.2d 655. In *Brock,* the employees were given wide discretion to determine which employee would serve "on-call" on a given night. The on-call employee was required to react to an alarm in the employee's home. "Otherwise, the on-call employee is free to eat, sleep, entertain guests, watch television, or engage in any other personal recreational activity, alone or with his family, as long as he is within hailing distance of the alarm and the station." 826 F.2d at 370.

In the present case, the police officers face a myriad of geographic limitations on their actions during the meal period and significant limitations on their personal business during that time. Because the case involves the worktime status of the officers' meal period, their freedom is reduced even further. The meal period is significantly limited in time, unlike the on-call cases cited by the defendant, and the police officers therefore are subject to unofficial, but no less real, limitations on their dress, travel, and personal activities.

The cases cited by the defendant are therefore unhelpful in the present case and must be discounted in resolving the present motions. The same must also be said for the defendant's citation to 29 C.F.R. § 553.221, which provides standards for the compensability of general on-call time. 29 C.F.R. § 785.19, which deals specifically with the compensability of employee meal periods, is the relevant portion of the ad-

ministrative regulations adopted pursuant to the FLSA. But the point does show the rather inconsistent nature of the defendant's argument: when it comes to § 785.19, the meal period regulation, the defendant argues strongly that the regulations are not binding and should be discarded; when it comes to § 553.221, the regulation covering general on-call time, the defendant cites the section as "further support" for its position. (Def. Memo. at 28).

4. De Minimis

■ The next argument advanced by the defendant is that any time spent by an officer under 15 minutes in length is not compensable as *de minimis*. To the extent that the defendant seeks a blanket determination that worktimes of less than 15 minutes are not compensable, the argument is denied.

The Supreme Court has recognized that in order to prevent "[s]plit-second absurdities," certain worktimes may be so short in duration as to be noncompensable. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946). "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Id.*

In the present case, the meal period time of the officers is subject to compensation. Whether an officer's meal period is in fact interrupted by a citizen, the significant restrictions placed on the freedom of the officer require compensation for the entire half-hour period. The defendant's argument that officers whose meals are temporarily interrupted may not be compensated for the remainder of their meal period as *de minimis* simply misses the point. The officers, who face significant limitations on their freedom throughout the entire meal period, are subject to compensation for that period.

The defendant's *de minimis* argument may be effective with regard to certain post-shift paperwork. Certain times spent by the plaintiffs in the completion of necessary reports may be so brief that they are not compensable under the FLSA. Sum-

mary judgment on the issue, however, is inappropriate. Despite the cases cited by the defendant, it is clear there can be no definite standard to determine whether post-shift work is *de minimis*. *See, e.g., D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 554 (10th Cir.1958). The scope of any application of the *de minimis* rule can be applied only after the trier of fact makes more definite findings as to the time actually spent by the plaintiffs in post-shift work. *See Anderson*, 328 U.S. at 692, 66 S.Ct. at 1194.

5. Waiver

■ The defendant argues that the plaintiffs have waived any right to compensation by failing to file requests for overtime pay. In this regard, it emphasizes that officers who filed requests for overtime for missed meal periods were usually awarded compensation. The defendant's argument fails with regard to the in-shift meal period. With regard to post-shift paperwork, waiver may or may not exist in individual instances, and summary judgment at this point would be inappropriate.

It is correct that most officers who filed a request for overtime compensation for *missed* meal periods (due to emergency calls or citizen requests) received compensation. But, as discussed above, the meal period itself, whether a portion was missed in fact or not, is subject to onerous limitations and is deserving of compensation. And as to the meal period itself, the defendant has always maintained, and maintains today, that the meal period is not worktime, and that it is not obliged to provide compensation for the meal period. There is absolutely no indication in the present case that an officer formally requesting compensation for his normal meal period simply would not have been engaging in a futile gesture.

In none of the waiver or estoppel cases cited by the defendant was the employee required to report overtime, where the action would have been pointless. In *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 475 F.Supp. 630 (D.Or.1979), *aff'd*, 646 F.2d 413 (9th Cir.1981), the court held that an em-

ployee who had failed to accurately report his overtime work was estopped from claiming compensation for the overtime. The court expressly found that the employee knew his employer regularly paid for reported overtime. 475 F.Supp. at 631. Similarly, in *Baker v. United States*, 23 Wage & Hour Cas. (BNA) 1224, 1978 WL 4180 (Ct.Cl.1978), the court found that the plaintiffs were barred from advancing overtime compensation claims against the government where they had failed to report the overtime. The court had expressly found that "the Government stood ready and willing to pay overtime compensation for any such overtime work if it had been properly documented and approved in accordance with the prevailing regulations." 23 Wage & Hour Cas. at 1231.

The defendant was fully aware that the police officers were engaged in 30–minute meal breaks. However, it has consistently contended that the time spent during those meal periods is not compensable. Under these circumstances, any failure of the officers to formally report the meal periods cannot constitute a waiver of their rights to compensation.

Individual plaintiffs perhaps may have waived their rights to compensation for post-shift paperwork. Or it may be, as the plaintiffs contend, that reports of post-shift work were not filed due to actions taken by the defendant to discourage such reports. Summary judgment on the issue clearly would be inappropriate, and the matter will be left to resolution by the trier of fact.

6. Issues of Intent

■ Finally, the defendant has moved for summary judgment on the issues of the appropriate statute of limitations and liquidated damages. As noted earlier, both issues involve the willfulness of the defendant's violation of the FLSA. The present matter, involving the intent of the defendant, cannot be resolved by summary judgment.

As a question of intent, the matter would in any event be disfavored as an appropriate issue for summary judgment. 6—Pt. 2 MOORE'S FEDERAL PRACTICE ¶ 56.17[41–1]. Here, both parties strongly dispute the nature of the city's intent in failing to provide compensation for meal periods and post-shift paperwork. For example, one question touching on the issue of the willfulness of the violation is the intent of the defendant in instituting the written meal period policy in October, 1987. The defendant, citing the deposition testimony of Chief LaMunyon, contends that there was no vindictive intent in the adoption of the policy. The plaintiffs cite the deposition testimony of another witness who testified that LaMunyon had announced in a meeting that the city would impose additional meal period restrictions if the FOP went to court to try and gain compensation for the officers' meal periods.

The innocence or willfullness of the violation of the Act is controverted by the parties. The intent of the city remains in issue, and will be resolved at trial.

■ The defendant city has also moved to compel the production of documents by the plaintiffs. The documents sought involve

the negotiation history of various Memoranda of Agreement between the Fraternal Order of Police ("FOP") and Defendant; documents prepared by or made available to the FOP and its membership regarding the Fair Labor Standards Act ("FLSA"); and documents regarding FOP meetings.

(Def. Motion at ¶ 1.)

The motion must be denied. The arguments of plaintiffs that the documents may not be discovered because they belong to a third party and because of attorney-client privilege need not be addressed. The motion is denied because the documents sought are irrelevant to the issues in the present case.

We know by the uncontroverted facts arising from the present motions for summary judgment that the FOP did not request compensation for meal periods in its contract negotiations with the city. Those external acts of the FOP are in evidence. What the city now wants is evidence of the

FOP's internal opinion on the issue. The FOP's internal thoughts about the compensability of the meal periods have no bearing on the issue remaining in the present case, which is what the city thought about the issue and whether its violation of the FLSA was willful.

It is clear that an employer may not escape its obligation to meet certain minimum standards under the FLSA by obtaining contracts with its employees which provide for less protection. The intent of the city must be determined from its actions and its understanding of the law. What the FOP thought is not a relevant matter, and the city's motion is therefore denied.

IT IS ACCORDINGLY ORDERED this 13 day of November, 1989, that the plaintiffs' motion for partial summary judgment is hereby granted. The defendant's motion for summary judgment and motion to compel discovery are denied.